[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 340.]

THE STATE EX REL. MASTER ET AL. *v*. CITY OF CLEVELAND ET AL.

[Cite as *State ex rel. Master v. Cleveland*, 1996-Ohio-300.]

*Mandamus to compel release of investigatory records pertaining to alleged illegal wiretapping by police officers or other individuals—Writ denied, when.*

(No. 95-1108—Submitted May 21, 1996—Decided August 14, 1996.)

IN MANDAMUS.

————————————

{¶ 1} In June 1995, relators, John R. Master, John H. Nix, Rebekah Deamon, Richard C. Klein, and William Weinkamer, filed this action seeking writs of mandamus to compel (1) respondent Carolyn Watts Allen, Chief Municipal Prosecutor for the city of Cleveland, to conduct and complete an investigation into the alleged misconduct of respondent Lieutenant Henry A. Tekancic, officer-in-charge of the Professional Conduct Internal Review ("PCIR") Unit of Cleveland's Division of Police, Cleveland Police Officer Sue Sazima, and other city employees, and (2) respondents Tekancic and Allen and other city officials to provide certain requested records. See *State ex rel. Master v. Cleveland* (1996), 75 Ohio St.3d 23, 25-26, 661 N.E.2d 180, 183. Relators had requested to inspect (1) any and all documents pertaining to the investigation conducted by the PCIR Unit relating to the interception and recording of telephone conversations of relators and other persons during February and March 1994 from telephones located at Master and Nix's Brookside Drive residence, (2) any and all tape recordings of telephone conversations of relators and other persons intercepted from the Brookside Drive residence during the same period, (3) all witness statements in Tekancic's custody relating to the police wiretapping investigation, and (4) Allen's file and records concerning the police investigation into Sazima's alleged misuse of a police computer. *Master,* 75 Ohio St.3d at 25, 661 N.E.2d at 183.

**{¶ 2}** After the parties submitted evidence and briefs, we denied relators' requests for writs of mandamus to compel Allen to investigate and prosecute Tekancic, Sazima, and the alleged wiretappers, and to appoint a special prosecutor. *Master*, 75 Ohio St.3d at 27, 661 N.E.2d at 184. We also denied relators' public records claims against all respondents, except Tekancic and Cleveland Director of Public Safety William Denihan. *Master*, 75 Ohio St.3d at 29, 661 N.E.2d at 185. As to Tekancic and Denihan, we concluded that although the requested records relating to the alleged wiretapping did not constitute exempt work product under R.C. 149.43(A)(2)(c), the evidence established the applicability of the R.C. 149.43(A)(2)(a) uncharged-suspect exception. *Master*, 75 Ohio St.3d at 30-31, 661 N.E.2d at 186. We ordered respondents Tekancic and Denihan to submit the subject records under seal for an *in camera* inspection and to file briefs on the applicability of the uncharged-suspect exception. *Master*, 75 Ohio St.3d at 31, 661 N.E.2d at 187.

**{¶ 3}** The cause is now before this court on the submitted sealed records and the parties' supplemental briefs. In addition, relators have filed a motion to expedite a decision in this case.

─────────────────

*Harold Pollock Co., L.P.A.*, and *Harold Pollock*, for relators.

*Sharon Sobol Jordan*, Cleveland Director of Law, and *Kathleen A. Martin*, Chief Trial Counsel, for respondents.

─────────────────

***Per Curiam.***

**{¶ 4}** In our previous opinion in this case, we held that the R.C. 149.43(A)(2)(c) work-product exception did not justify withholding the subject records because "[t]here is no evidence that criminal charges against police officers or other individuals involved in the alleged wiretapping are either 'pending' or 'highly probable' as required for application of the work product exception."

*Master,* 75 Ohio St.3d at 29, 661 N.E.2d at 186; *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 639 N.E.2d 83, paragraph five of the syllabus; *State ex rel. Police Officers for Equal Rights v. Lashutka* (1995), 72 Ohio St.3d 185, 188, 648 N.E.2d 808, 810.

**{¶ 5}** In *State ex rel. Leonard v. White* (1996), 75 Ohio St.3d 516 , 518, 664 N.E.2d 527 , ____ , we clarified paragraph five of the *Steckman* syllabus and *Police Officers*, by holding that "where it is evident that a crime has occurred, although no suspect has yet been charged, any notes, working papers, memoranda, or similar materials compiled by law enforcement officials in anticipation of a subsequent criminal proceeding are exempt from disclosure as R.C. 149.43(A)(2)(c) work product." *Leonard* distinguished *Master* because in *Master*, it was not evident that the alleged illegal wiretapping had occurred. *Id.* However, we reached our conclusion in *Master* prior to an *in camera* inspection of the subject records.

**{¶ 6}** The records submitted under seal indicate that some person or persons purposely intercepted and recorded relators Nix and Master's cordless telephone conversations through the use of some interception device. The foregoing constitutes a violation of R.C. 2933.52(A). *State v. Bidinost* (1994), 71 Ohio St.3d 449, 644 N.E.2d 318, paragraph two of the syllabus. Consequently, we now hold that based on an examination of the sealed records, the subject records constitute exempt R.C. 149.43(A)(2)(c) work product, since they were compiled in anticipation of litigation. *Leonard, supra.*

**{¶ 7}** In addition, we find that most of the subject records are exempt under the R.C. 149.43(A)(2)(a) uncharged-suspect exception because the protected identities of uncharged suspects are inextricably intertwined with the investigatory records. *State ex rel. Beacon Journal Publishing Co. v. Kent State Univ.* (1993), 68 Ohio St.3d 40, 44, 623 N.E.2d 51, 54; *State ex rel. McGee v. Ohio State Bd. of Psychology* (1990), 49 Ohio St.3d 59, 60, 550 N.E.2d 945, 947.

{¶ 8} Respondents' investigation of the illegal wiretapping of Master and Nix's residence was prompted by relators' allegations. Relators provided information to respondents which alleged that several Cleveland police officers, attorneys, and all of relators' Brookside Drive neighbors were involved in the illegal wiretapping. Given the breadth of the allegations relators provided to the police, every neighbor and several police officers were "suspects," and the identities of these uncharged suspects are necessarily intertwined with most of the investigatory records.

{¶ 9} In so holding, we reject relators' assertion that the uncharged-suspect exception does not apply where the accusation of criminal conduct is already public knowledge. Initially, R.C. 149.43(A)(2)(a) does not preclude the exception's application in cases where a person's status as a suspect in a criminal matter has been previously disclosed by media reports. Admittedly, a person who has previously been identified with the criminal matter under investigation has already been subjected to some adverse publicity. Nevertheless, in these circumstances, release of the investigatory records could create a high probability of additional disclosure of the person's status as an uncharged suspect. The actual investigatory records would be more credible evidence of a person's status as a suspect to law enforcement officials than either unconfirmed media reports or the speculation of individuals like relators. In other words, another purpose of the uncharged-suspect exception is to avoid subjecting such persons to additional adverse publicity where, as here, there have been public reports alleging that certain persons were suspects in the wiretapping matter.

{¶ 10} Second, avoidance of subjecting persons to adverse publicity where they may otherwise never have been identified with the matter under investigation is only *one* of the purposes of the uncharged-suspect exception. *Master*, 75 Ohio St.3d at 30, 661 N.E.2d at 186; *State ex rel. Thompson Newspapers v. Martin* (1989), 47 Ohio St.3d 28, 30, 546 N.E.2d 939, 942. Another of the exception's

4

purposes is to prevent compromising subsequent efforts to reopen and solve inactive cases. *Master*, 75 Ohio St.3d at 30, 661 N.E.2d at 186; *State ex rel. Moreland v. Dayton* (1993), 67 Ohio St.3d 129, 131, 616 N.E.2d 234, 236. Disclosure of these records might interfere with law enforcement efforts to further investigate the wiretapping matter.

{¶ 11} Finally, it appears that the publicity which relators contend renders the uncharged-suspect exception inapplicable has been instigated by their civil litigation and their own allegations. It would be unreasonable to hold that publicity generated by litigation and related media reports initiated by relators entitles them to records that would otherwise be excepted from disclosure under R.C. 149.43(A)(2)(a). If that were the case, individuals could determine which records should be disclosed by their own generation of publicity. See, *e.g.*, *In re T.R.* (1990), 52 Ohio St.3d 6, 20, 556 N.E.2d 439, 453, where we rejected a newspaper's contention that media coverage which preceded closure and gag orders was so pervasive as to render those orders ineffective because accepting such argument would let the media determine which hearings should be open by publicizing the case; cf. *State ex rel. Plain Dealer Publishing Co. v. Lesak* (1984), 9 Ohio St.3d 1, 4, 9 OBR 52, 54, 457 N.E.2d 821, 824 (Celebrezze, C.J., concurring). This is not a case where respondents have already disclosed the investigatory records and thereby waived the application of the uncharged-suspect exemption. See *State ex rel. Zuern v. Leis* (1990), 56 Ohio St.3d 20, 22, 564 N.E.2d 81, 84; *State ex rel. Lundgren v. LaTourette* (1993), 85 Ohio App.3d 809, 811, 621 N.E.2d 509, 511. Therefore, the prior publicity concerning the wiretapping does not preclude the applicability of the R.C. 149.43(A)(2)(a) uncharged-suspect exception.

{¶ 12} Further, the submitted evidence contains LEADS printouts, which are exempt under R.C. 149.43(A)(1) and Ohio Adm. Code 4501:2-10-06. See *State ex rel. Multimedia, Inc. v. Snowden* (1995), 72 Ohio St.3d 141, 144, 647 N.E.2d

1374, 1378; *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1992), 82 Ohio App.3d 202, 206-207, 611 N.E.2d 838, 840-841.

{¶ 13} Therefore, based on the foregoing, the subject records are exempt from disclosure under the R.C. 149.43(A)(2)(c) work-product, the R.C. 149.43(A)(2)(a) uncharged-suspect, and the R.C. 149.43(A)(1) other-law provisions. The records do not indicate any police cover-up or fictitious investigation, as relators have alleged. Instead, the sealed investigatory file indicates a thorough investigation by law enforcement officials.

{¶ 14} Relators also present a lengthy argument as to their entitlement to the appointment of a special prosecutor. However, in *Master*, we already denied relators' request for a writ of mandamus on this claim. We decline relators' invitation to revisit this issue.

{¶ 15} Accordingly, based on an inspection of the sealed records and a consideration of the arguments of the parties, the writ of mandamus and request for attorney fees is denied. This also moots relators' motion to expedite.

*Writ denied.*

MOYER, C.J., RESNICK, F.E. SWEENEY, COOK and STRATTON, JJ., concur.

DOUGLAS, J., concurs in judgment only.

PFEIFER, J., concurs in part and dissents in part.

————————————

**PFEIFER, J., concurring in part and dissenting in part.**

{¶ 16} I concur with the majority's holding that parts of some of the records in this case fall within the "other-laws" exception of R.C. 149.43(A)(1). However, I dissent from the majority's holding that the records also are exempt under the "work-product" exemption of R.C. 149.43(A)(2)(c) and the "uncharged-suspect" exception of R.C. 149.43(A)(2)(a). I do so, in part, because I believe that this court should reconsider its decision in *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 639 N.E.2d 83.

6

**{¶ 17}** I supported *Steckman* with the view that a significant change in Crim.R. 16 was imminent, a change which would have opened the discovery process in criminal cases. In my concurrences in *Steckman* at 440, 639 N.E.2d at 97, and in *State v.Lambert* (1994), 69 Ohio St.3d 356, 356-357, 632 N.E.2d 511, I urged the adoption of criminal discovery rules similar to the local rules of Montgomery County (Loc.R. 3.03[I][D][2][d]), which provide that upon defense counsel's demand, a criminal defendant shall be provided with an "information packet" that contains all police reports, witness statements, defendant's statements, and laboratory reports, and the names and addresses of all witnesses.

**{¶ 18}** This court's proposed modification of Crim.R.16, which would have achieved those ends, was rejected by the General Assembly. Consequently, criminal discovery remains limited, murky, and time-consuming. This court should narrowly define exceptions to the Public Records Act to allow broader discovery.

**{¶ 19}** This case is different from cases where a defendant seeks the release of criminal investigatory files. Here, instead, it is the party who was the alleged victim of the criminal activity who seeks the records. That fact should put this case on a different footing from the start. The underlying criminal case is dormant. While the matter is not officially listed as "inactive," there is no ongoing activity on the case. The case remains open, it seems, on the off-chance that some new evidence should suddenly appear.

**{¶ 20}** Public records are public, and exceptions to that general rule should be narrow. Relators here do not seek to get a leg up on prosecutors in their defense of a criminal action. There is no fear that relators would approach witnesses to try to keep them from testifying in a criminal trial. Further, if the case is dormant, the "uncharged suspects" must no longer be suspects. Thus, the spirit of the exceptions of R.C. 149.43 would not be violated with the release of these records.

————————————