The STATE ex rel. STROTHERS

v.

McFAUL, Sheriff.

[Cite as *State ex rel. Strothers v. McFaul* (1997), 122 Ohio App.3d 327.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 71532.

Decided Aug. 7, 1997.

*Gerald O. Strothers, Jr., pro se.*

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Carol Shockley,* Assistant Prosecuting Attorney, for respondent.

JAMES M. PORTER, Judge.

On November 4, 1996, the relator, Gerald O. Strothers, Jr., commenced this mandamus action against the respondent, Sheriff Gerald T. McFaul, pursuant to R.C. 149.43, the Ohio Public Records Act, to compel the sheriff to release a report on an investigation, conducted by the sheriff's office, of a juvenile court employee for falsification of records. On May 23, 1997, pursuant to this court's order, the

sheriff submitted the report under seal for an *in camera* inspection along with a motion for summary judgment and supporting affidavits. On June 4, 1997, Strothers replied with his own motion for summary judgment. The sheriff moved to strike this filing on June 13, and Strothers filed a brief in response on June 18, 1997. After considering all of the submitted materials, including the twelve-page report, and for the following reasons, this court grants the sheriff's motion for summary judgment, denies Strothers's motion for summary judgment, and denies the motion to strike.

## FACTUAL BACKGROUND

The juvenile court home detention program requires that juvenile court employees check the juveniles in the program by visiting their homes. These employees may be reimbursed for the mileage, by submitting proper documentation to the county auditor.

Strothers investigated one such employee. By examining, *inter alia,* the mileage records submitted to the auditor, he concluded that this employee was falsifying the mileage reimbursement claims and the court records that the visits were even made. Strothers presented his evidence and conclusions to the Cuyahoga County Prosecuting Attorney, Economic Crimes Unit. Shortly thereafter, WKYC-TV, Channel 3, through its investigative reporter Paul Orlousky, broadcast an "expose"' on this employee. The gravamen of the feature was that the employee was falsifying the mileage reimbursement records and the visits.

The prosecutor's office and the juvenile court, through its administrative judge, then asked the sheriff to investigate these criminal accusations. The sheriff assigned Sergeant Gary Kral and Detective Bill Kleppel to investigate for possible criminal prosecution. These investigators drove the routes claimed by the juvenile court employee on the mileage reimbursement slips. They found no significant discrepancies. Sometimes the employee had overstated the mileage by a few tenths of a mile, and other times the employee had understated the mileage by a few tenths of a mile. The investigators concluded that the submitted mileage properly balanced out. They also interviewed the parents or guardians of the children who were committed to the home detention program and under the supervision of the employee. The investigators swear in their affidavits that they promised confidentiality to these people to protect the best interest of the children. The investigation revealed no falsification: the employee had made the visits as indicated by court records. Indeed, the parents and guardians generally considered the employee to be a dedicated public servant.

The investigators prepared a twelve-page report detailing their investigation, which is the record Strothers seeks. Additionally, the investigators prepared a one-page summary of their findings, which names the employee, and sent this to

the administrative judge of the juvenile court. This summary, a copy of which Strothers has obtained and attached to his petition for mandamus, states that the investigators found no wrongdoing by the employee.

Strothers then unsuccessfully sought to obtain a copy of the full report. This public records mandamus action followed.

## DISCUSSION OF LAW

### GENERAL PRINCIPLES

R.C. 149.43(A)(1) defines a "public record" as "any record that is kept by any public office," with several exceptions, including "(h) confidential law enforcement investigatory records."

Subsection 149.43(A)(2) further defines "confidential law enforcement investigatory records" as any record that pertains to a law enforcement investigatory matter of a criminal, quasi-criminal, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following: (a) the identity of a suspect who has not been charged with the offense to which the record pertains, or of an information source or witness to whom confidentiality has been reasonably promised; (b) information provided by an information source or witness to whom confidentiality has been reasonably promised, which information would reasonably tend to disclose his identity; (c) specific confidential investigatory techniques or procedure or specific investigatory work product; and (d) information which would endanger the physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source.

In interpreting this statute the Supreme Court of Ohio has repeatedly ruled in favor of disclosing records. Governmental records belong to the people, and governmental bodies are merely custodians. Therefore, a governmental entity refusing to release records has the burden of proving that the records are excepted from disclosure by the statute. Moreover, the exceptions to disclosure are to be strictly construed against the custodian of public records, and all doubts are to be resolved in favor of disclosure. *State ex rel. Master v. Cleveland* (1996), 75 Ohio St.3d 23, 661 N.E.2d 180; *State ex rel. Cincinnati Enquirer v. Hamilton Cty.* (1996), 75 Ohio St.3d 374, 662 N.E.2d 334; *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1988), 38 Ohio St.3d 79, 526 N.E.2d 786; and *Cleveland Police Patrolmen's Assn. v. Cleveland* (1996), 110 Ohio App.3d 796, 675 N.E.2d 501.

If the status of a record is disputed, then it must be submitted to the court for *in camera* inspection. If only part of a record is exempt, the court is to excise the exempted part and order the release of the remainder of the record.

However, when protected information is inextricably intertwined with the remainder of the record, it is appropriate to withhold the entire record. *State ex rel. Polovischak v. Mayfield* (1990), 50 Ohio St.3d 51, 552 N.E.2d 635; *State ex rel. McGee v. Ohio State Bd. of Psychology* (1990), 49 Ohio St.3d 59, 550 N.E.2d 945; and *State ex rel. Thompson Newspapers, Inc. v. Martin* (1989), 47 Ohio St.3d 28, 546 N.E.2d 939.

These general principles provide the parameters with which to judge the arguments of the parties and scrutinize the individual records.

## RESPONDENT'S ARGUMENTS

The sheriff's first argument is that Strothers's petition in mandamus is fatally flawed because it violates various rules of procedure by not stating a short and plain statement of the claim. Rather, Strothers essentially writes a brief and includes many unnecessary items. Although Strothers's petition may not be a paragon of proper pleading, it does state a claim: he sought to review what he thinks is a public record, and the government refused him access to it. Thus, his proper remedy is a mandamus action pursuant to R.C. 149.43(B). *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 639 N.E.2d 83. Accordingly, this argument is not well taken.

The sheriff's second argument is that the record is exempt as a confidential law enforcement investigatory record, the release of which would disclose the identity of information sources or witnesses to whom confidentiality had been reasonably promised. R.C. 149.43(A)(2)(a) and (b). *State ex rel. Multimedia, Inc. v. Snowden* (1995), 72 Ohio St.3d 141, 142, 647 N.E.2d 1374, 1377, affirmed the principles for exempting records under R.C. 149.43(A)(2). The court undertakes a two-step analysis: (1) Is the record a confidential law enforcement record? and (2) Would the release of the record create a high probability of disclosure of any of the four types of information specified in R.C. 149.43(A)(2)?

The answer to the first question for the case *sub judice* is yes. This report is a confidential law enforcement investigatory record. The investigation was undertaken based upon a specific suspicion of criminal wrongdoing, *i.e.*, that the employee was falsifying court records. We note that Strothers first presented this matter to the prosecutor as a criminal matter.

The answer to the second question is also yes. Disclosure of the record would identify information sources or witnesses to whom confidentiality had been reasonably promised. The investigators in their affidavits swear that they promised confidentiality to the witnesses with whom they talked. Strothers offers no affidavits or other evidence to rebut these sworn statements. The promises of confidentiality were reasonable to promote the longstanding policy of

protecting the children involved. Cf. Juv.R. 37(B): "No public use shall be made by any person, including a party, of any juvenile court record, including the recording or a transcript of any juvenile court hearing, except in the course of an appeal or as authorized by order of the court." Disclosing the names of juveniles involved through these records would frustrate the confidentiality policy by permitting indirectly what is prohibited directly. Moreover, "the government should be able to honor its word and its obligations when it promises confidentiality to a person. * * * Abrogations of such promises may erode trust in government, arouse feelings of betrayal and diminish co-operation." *State ex rel. Broom v. Cleveland* (Aug. 27, 1992), Cuyahoga App. No. 59571, unreported, at 24, 1992 WL 209575; *Porter Cty. Chapter of Izaak Walton League of Am., Inc. v. United States Atomic Energy Comm.* (N.D.Ind.1974), 380 F.Supp. 630. The Supreme Court of Ohio in *State v. Port Clinton Fisheries, Inc.* (1984), 12 Ohio St.3d 114, 115, 12 OBR 157, 158, 465 N.E.2d 865, 867, overruled on other grounds in *Steckman,* emphasized the importance of protecting confidentiality: "The government's qualified privilege to withhold from disclosure the names of informants in criminal cases is well-recognized. The purpose of the privilege is the furtherance and protection of the public in effective law enforcement. The promise of anonymity to informants encourages the flow of information vital to detection and prosecution of criminal activity." (Citations omitted.) The protected information in the twelve-page report under this exemption is so comprehensive that endeavoring to redact only the protected information would be an exercise in futility. *Polovischak, McGee,* and *Thompson Newspapers.*

■ The sheriff's next argument is that the record is exempt from disclosure because its release would reveal the identity of an uncharged suspect under R.C. 149.43(A)(2)(a). Again, the record is a confidential law enforcement investigatory record because it was compiled during an investigation of specifically alleged criminal activity against a specific person. However, as the parties agree, no criminal charges have yet been brought. Consequently, the record's disclosure would necessarily reveal the identity of an uncharged suspect. Thus, it is exempt.

■ Moreover, the protected information is so inextricably intertwined throughout the record that it is necessary to withhold the entire record. Furthermore, the uncharged suspect exemption applies even when there is no current ongoing investigation and the prosecutor has decided not to institute charges. Even the lapse of time does not diminish the viability of this exemption. *State ex rel. Master v. Cleveland* (1996), 75 Ohio St.3d 23, 661 N.E.2d 180; *State ex rel. Moreland v. Dayton* (1993), 67 Ohio St.3d 129, 616 N.E.2d 234; *Thompson Newspapers;* and *State ex rel. Sweeney v. Parma Hts.* (1994), 93 Ohio App.3d 349, 638 N.E.2d 614.

In response, Strothers maintains that the application of the uncharged-suspect exemption would be ludicrous because the identity of the uncharged suspect, the employee, has been publicly and repeatedly revealed in these pleadings, in pleadings before the Supreme Court of Ohio, in the one-page summary released by the sheriff's office, and in television newscasts. Consequently, the argument goes, there is nothing left to hide. Although at first blush this argument may seem compelling, it is ultimately not persuasive.

In *State ex rel. Master v. Cleveland* (1996), 76 Ohio St.3d 340, 667 N.E.2d 974 (*Master II* ), the Supreme Court of Ohio rejected this very argument, that public knowledge of the uncharged suspect nullifies the exemption. The court reasoned that the statute itself does not provide for such a nullification and that abrogating the exemption, even in the face of public knowledge, would compromise the purposes and foundations for the exemption. The court then noted that one of the main purposes of the exemption is to protect the individual from unwanted and/or adverse publicity. Even in circumstances of public knowledge, the release of the official investigatory records would confirm a person's status as a criminal suspect and would create a high probability of additional disclosure of unsavory characterization.

Additionally, another purpose of the exemption is not to compromise the reopening of the case. If, as Strothers insists, the employee is guilty of falsification, then revealing the full investigatory report could aid the employee in evading prosecution. Consequently, even the release of the one-page summary does not waive the exemption for the full report. Thus, in *State ex rel. WLWT–TV5 v. Leis* (1997), 77 Ohio St.3d 357, 361, 673 N.E.2d 1365, 1369, the Supreme Court of Ohio ruled that "nothing in the foregoing exemptions precludes their effectiveness merely because the investigation has been the subject of publicity. Absent evidence that respondents have already disclosed *the investigatory records* to the public and thereby waived application of certain exemptions, the exemptions are fully applicable." (Emphasis added.) The Supreme Court's use of the phrase *the investigatory records* indicates that the records themselves must be disclosed in order for waiver to be applicable. Release of a summary or other information does not waive the exemption for the full record.

Finally, in *Master II*, the Supreme Court noted that, as in the instant case, the relators generated the publicity surrounding their records request. The court held that it would be unreasonable to have the statute compromised by publicity created by litigation and related media reports initiated by the relators themselves. Accordingly, the uncharged-suspect exception exempts the subject investigatory report from disclosure.

The present case is distinguishable from relevant cases cited by Strothers: *NBC; Snowden; Barton v. Shupe* (1988), 37 Ohio St.3d 308, 525 N.E.2d 812;

*State ex rel. Dwyer v. Middletown* (1988), 52 Ohio App.3d 87, 557 N.E.2d 788; *State ex rel. Police Officers for Equal Rights v. Lashutka* (1995), 72 Ohio St.3d 185, 648 N.E.2d 808; and *Cleveland Patrolmen's Assn. v. Cleveland* (1996), 110 Ohio App.3d 796, 675 N.E.2d 501. Some of these cases did not involve confidential law enforcement investigatory records. *NBC*, for example, involved routine internal reports for the use of deadly force by the police. *Snowden* concerned police application records, not criminal investigatory records. More important, the exemptions under R.C. 149.43(A)(2)(a) and (b) were not invoked. In *Barton* and *Dwyer*, the uncharged-suspect exemption appears to have been precluded; the opinions indicate that charges had been filed against the suspect in those cases. In *Lashutka* and *Patrolmen's Assn.*, the respondents unsuccessfully argued R.C. 149.43(A)(2)(c) and *Steckman*, not the exemptions argued in the present case.

Accordingly, the sheriff's motion for summary judgment is granted, and this application for a writ of mandamus is denied. Relator to pay costs.

*Judgment for respondent.*

JAMES D. SWEENEY, C.J., and DAVID T. MATIA, J., concur.