THE STATE EX REL. OHIO PATROLMEN'S BENEVOLENT
ASSOCIATION ET AL. *v.* CITY OF MENTOR ET AL.

[Cite as *State ex rel. Ohio Patrolmen's Benevolent
Assn. v. Mentor* (2000), 89 Ohio St.3d 440.]

(No. 99–1552—Submitted May 23, 2000—Decided August 16, 2000.)

442

*Climaco, Lefkowitz, Peca, Wilcox & Garofoli Co., L.P.A., Joseph Hegedus* and *Mark J. Volcheck,* for relators.

*Johnson & Angelo, Gary C. Johnson, Thomas L. Colaluca* and *Jeffrey C. Miller,* for respondents.

**Per Curiam.**

### Mandamus: Spetrino Investigative Records

Relators assert that they are entitled to a writ of mandamus to compel respondents to provide them with access to the Spetrino investigative records under R.C. 149.43, Ohio's Public Records Act. R.C. 149.43 mandates full access to all public records upon request unless the requested records fall within one of the specified exemptions. *State ex rel. Besser v. Ohio State Univ.* (2000), 87 Ohio St.3d 535, 538, 721 N.E.2d 1044, 1047. In fact, public employee personnel records, including personnel records of police officers reflecting discipline, are generally regarded as public records, absent proof of an exemption. *State ex rel. Multimedia, Inc. v. Snowden* (1995), 72 Ohio St.3d 141, 142–143, 647 N.E.2d 1374, 1377–1378.

Respondents claim that the Spetrino records are exempt from disclosure as confidential law enforcement investigatory records under R.C. 149.43(A)(1)(h). R.C. 149.43(A)(1)(h) exempts confidential law enforcement investigatory records from the definition of "[p]ublic record[s]," and R.C. 149.43(A)(2) defines these records to include:

"[A]ny record that pertains to *a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following:*

"(a) *The identity of a suspect who has not been charged with the offense to which the record pertains,* or of an information source or witness to whom confidentiality has been reasonably promised;

"(b) Information provided by an information source or witness to whom confidentiality has been reasonably promised, which information would reasonably tend to disclose the source's or witness's identity;

"(c) Specific confidential investigatory techniques or procedures or *specific investigatory work product;*

"(d) *Information that would endanger the life or physical safety of* law enforcement personnel, *a crime victim, a witness,* or a confidential information source." (Emphasis added.)

The applicability of the R.C. 149.43(A)(2) confidential-law-enforcement-investigatory-record exemption requires, first, that the records pertain to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, and, second, that the release of the records would create a high probability of disclosure of any of the four types of information specified in R.C. 149.43(A)(2).

See *State ex rel. Yant v. Conrad* (1996), 74 Ohio St.3d 681, 684, 660 N.E.2d 1211, 1214.

The first requirement is satisfied because the records pertain to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature. As in comparable cases, " '[t]he investigation herein was of specific alleged misconduct, not a routine monitoring investigation.' " *Yant*, 74 Ohio St.3d at 684, 660 N.E.2d at 1214, quoting *State ex rel. Polovischak v. Mayfield* (1990), 50 Ohio St.3d 51, 53, 552 N.E.2d 635, 637 (both involving Bureau of Workers' Compensation investigations of bureau employees' alleged misconduct). The Spetrino investigative records were generated by the alleged misconduct of several Mentor police officers specified in Spetrino's citizen's complaint rather than general, routine employment and personnel inquiries ancillary to law enforcement matters. Cf. *State ex rel. Freedom Communications, Inc. v. Elida Community Fire Co.* (1998), 82 Ohio St.3d 578, 581, 697 N.E.2d 210, 214 (community fire company's investigation of alleged sexual assault involving two employees after police closed their separate investigation); *Multimedia*, 72 Ohio St.3d at 143, 647 N.E.2d at 1378 (investigations routinely conducted and part of personnel records of each police recruit).

And even if the internal affairs investigation of the Spetrino complaint were considered routine, there is no automatic, *per se* exclusion of all routine police criminal investigations from the first step of the R.C. 149.43(A)(2) definition of confidential law enforcement investigatory record. *State ex rel. Natl. Broadcasting Co. v. Cleveland* (1991), 57 Ohio St.3d 77, 80, 566 N.E.2d 146, 149.

For the second requirement of the record exemption, respondents claim that release of the Spetrino investigative records would create a high probability of disclosure of specific investigatory work product under R.C. 149.43(A)(2)(c), information that would endanger the life or physical safety of a witness under R.C. 149.43(A)(2)(d), and the identity of an uncharged suspect under R.C. 149.43(A)(2)(a). Respondents also assert that relators are not entitled to access to the records because the investigation is ongoing and not yet completed.

Exempt work product is information assembled by law enforcement officials in connection with a *pending* or *highly probable* criminal proceeding. *State ex rel. Gannett Satellite Info. Network, Inc. v. Petro* (1997), 80 Ohio St.3d 261, 266–267, 685 N.E.2d 1223, 1228. Investigative materials do not constitute work product when it is not evident that a crime has occurred, because the records are then compiled by law enforcement officials in part to determine if any crime has occurred and not necessarily in anticipation of litigation. *State ex rel. Leonard v. White* (1996), 75 Ohio St.3d 516, 518, 664 N.E.2d 527, 529.

Based on these standards, the work-product exemption does not apply to the Spetrino investigative records. No criminal proceeding resulting from the Spe-

trino investigation was either pending or highly probable when relators requested access to the investigative records. *Id.; Cleveland Police Patrolmen's Assn. v. Cleveland* (1996), 110 Ohio App.3d 796, 801–802, 675 N.E.2d 501, 504; see, also, *State ex rel. Glover v. Lashutka* (Dec. 31, 1996), Franklin App. No. 96APD10–1433, unreported, 1996 WL 751548, applying *Leonard* to hold that "[t]he fact that this investigation could lead to civil and/or criminal proceedings, however, is not sufficient to bring it under the R.C. 149.43(A)(2)(c) exception for 'specific investigatory work product.'" The sealed investigative records indicate that crimes may not have occurred. In fact, respondents concede that, even when they filed their merit brief, "a possibility exist[ed] that formal charge[s] w[ould] not be sought."

The R.C. 149.43(A)(2)(d) witness-endangerment exemption is also inapplicable. As respondents admit, "the record does not indicate a high probability of danger to the life or physical safety of a witness."

Moreover, to the extent that respondents claim that the records are exempt because the investigation concerning the Spetrino matter is still ongoing, R.C. 149.43 does not contain an "ongoing investigation" exemption for public records. See *Yant*, 74 Ohio St.3d at 683–684, 660 N.E.2d at 1213–1214 (relator is entitled to investigative records despite public office's claim that investigation had been "reopened").

Nevertheless, the evidence establishes that the Spetrino investigative records are exempt to the extent that their release would reveal the identities of uncharged suspects under R.C. 149.43(A)(2)(a). Respondents' evidence shows that an active criminal investigation is being conducted concerning the Spetrino matter.

Despite the foregoing evidence, relators contend that the uncharged-suspect exemption does not apply to the Spetrino records because of widespread publicity concerning the Spetrino investigation, respondents' failure to claim this exemption until after this mandamus action was initiated, respondents' use of *Garrity* warnings [1] during investigative interviews of police officers, and the absence of pending or highly probable criminal charges.

---

1. The warning given to police officers questioned during the Spetrino investigation provided:

"I wish to advise you that you are being questioned as part of an official investigation of the Mentor Police Department. You will be asked questions specifically directed and narrowly related to the performance of your official duties or fitness for office. You are entitled to all the rights and privileges guaranteed by the laws and the Constitution of this state and the Constitution of the United States, including the right not to be compelled to incriminate yourself. I further wish to advise you that if you refuse to testify or to answer questions relating to the performance of your official duties or fitness for duty, you will be subject to departmental charges which could result in your dismissal from the Mentor Police Department. If you do answer, neither your statements nor any information or evidence which is gained by reason of such statements can be used against you in any subsequent criminal proceedings. However, these statements may be used against you in

Relators' assertions are meritless. The uncharged-suspect exemption may still apply even though the accusation of criminal conduct is already public knowledge. *State ex rel. Master v. Cleveland* (1996), 76 Ohio St.3d 340, 342, 667 N.E.2d 974, 975–976 (*"Master II"*). Here, as in *Master II,* the publicity concerning the investigation did not preclude application of the uncharged-suspect exemption because release of the records would subject suspects to additional adverse publicity and might compromise subsequent efforts to resolve the matter, and respondents have not voluntarily disclosed the records and thereby waived the application of the uncharged-suspect exemption. *Master II,* 76 Ohio St.3d at 342–343, 667 N.E.2d at 976–977; *State ex rel. WLWT–TV5 v. Leis* (1997), 77 Ohio St.3d 357, 361, 673 N.E.2d 1365, 1369–1370; *State ex rel. Strothers v. McFaul* (1997), 122 Ohio App.3d 327, 333, 701 N.E.2d 759, 762–763 (court rejected argument that uncharged-suspect exemption did not apply where identity of suspect had been revealed in pleadings from litigation, a summary released by the sheriff's office, and television newscasts).

Further, respondents' failure to specify the uncharged-suspect exemption as a basis for withholding the Spetrino investigative record until after this action was filed does not prohibit the applicability of the exemption. See *State ex rel. Plain Dealer Publishing Co. v. Cleveland* (1996), 75 Ohio St.3d 31, 34, 661 N.E.2d 187, 190 ("[E]xceptions to disclosure under R.C. 149.43 are not affirmative defenses, and the city's failure to raise the exceptions it now relies on does not prohibit the court from considering them.").

Moreover, the mere fact that police officers interviewed during the Spetrino investigation received *Garrity* warnings did not mean that it could not be a criminal investigation with criminal suspects. *Garrity* precludes the use, in subsequent criminal proceedings against a public employee, only of evidence obtained as a result of that employee's interrogation and does not prevent the use of other investigatory evidence or another employee's interrogation statements in a subsequent criminal proceeding.

In addition, the absence of pending or highly probable criminal charges is not fatal to the applicability of the uncharged-suspect exemption. See *State ex rel. Master v. Cleveland* (1996), 75 Ohio St.3d 23, 29–30, 661 N.E.2d 180, 185–186 (*"Master I"*) (uncharged suspect exemption may apply even if work-product exemption does not); *Strothers,* 122 Ohio App.3d at 333–334, 701 N.E.2d at 763.

Therefore, respondents are entitled to withhold those portions of the Spetrino investigative records that, if released, would create a high probability of disclo-

---

relation to subsequent departmental charges." (Sealed Exs. G and H, P2.) See *Garrity v. New Jersey* (1967), 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562; *In re Civ. Serv. Charges & Specs. Against Piper* (2000), 88 Ohio St.3d 308, 309, 725 N.E.2d 659, 660, fn. 1.

sure of the identity of uncharged suspects. *Master I,* 75 Ohio St.3d at 30–31, 661 N.E.2d at 186.

But the protected identities of uncharged suspects are not inextricably intertwined with all of the remaining records so as to exempt the totality of the Spetrino investigative records. Cf. *Master II,* 76 Ohio St.3d at 342, 667 N.E.2d at 976. And certain records, *e.g.,* copies of newspaper articles and statutes, are unquestionably nonexempt and do not become exempt simply because they are placed in an investigative or prosecutorial file. *Gannett,* 80 Ohio St.3d at 267, 685 N.E.2d at 1229; *WLWT–TV5,* 77 Ohio St.3d at 361, 673 N.E.2d at 1370. This conclusion comports with our duty in public records cases to strictly construe exemptions from disclosure. *State ex rel. Cleveland Police Patrolmen's Assn. v. Cleveland* (1999), 84 Ohio St.3d 310, 312, 703 N.E.2d 796, 797.

Accordingly, we grant a writ of mandamus to compel respondents to give relators access to those portions of the Spetrino investigative records that do not disclose identities of uncharged suspects or are otherwise unquestionably nonexempt records, *e.g.,* news articles and statutes. We deny the writ for the remaining portions of the records that, if released, would create a high probability of disclosure of the identities of uncharged suspects. See R.C. 149.43(A)(1)(h) and (2)(a).

### Attorney Fees

Relators also request an award of attorney fees incurred by them in this mandamus action. Relators requested four different categories of records in this case: (1) the hazing investigative records, (2) the Spetrino investigative records, (3) payroll records, and (4) compensatory and overtime records.

Relators are not entitled to attorney fees concerning those claims that were meritless. For example, the compensatory and overtime records either did not exist or were disclosed to relators before this action was filed. See *State ex rel. Warren v. Warner* (1999), 84 Ohio St.3d 432, 433, 704 N.E.2d 1228, 1229 ("[N]o duty under R.C. 149.43 to create documents to meet [requester's] demands."). And most of the requested payroll records were provided to relators before they filed this action.

In addition, relators received copies of some of the requested records after they filed this mandamus case, *i.e.,* the hazing investigative records and certain payroll records that had been inadvertently excluded from the records provided to relators before this action. Respondents' post-action disclosure of these records rendered their claims for these records moot. *State ex rel. Wadd v. Cleveland* (1998), 81 Ohio St.3d 50, 52, 689 N.E.2d 25, 27.

The mootness of these claims does not preclude an award of attorney fees. Under *State ex rel. Pennington v. Gundler* (1996), 75 Ohio St.3d 171, 661 N.E.2d

1049, syllabus, "[a] court may award attorney fees pursuant to R.C. 149.43 where (1) a person makes a proper request for public records pursuant to R.C. 149.43, (2) the custodian of the public records fails to comply with the person's request, (3) the requesting person files a mandamus action pursuant to R.C. 149.43 to obtain copies of the records, and (4) the person receives the requested public records only after the mandamus action is filed, thereby rendering the claim for a writ of mandamus moot." Relators met the second, third, and fourth *Pennington* requirements for the hazing investigative and payroll records.

For the remaining *Pennington* requirement of a proper request for public records, the hazing investigative records, like the Spetrino investigative records, were not exempt under the RC. 149.43(A)(2)(c) work-product or (2)(d) witness-endangerment exemptions. They were, however, exempt for the same reasons as the Spetrino records, to the extent that the uncharged-suspect exemption of R.C. 149.43(A)(2)(a) applied. Neither the prosecutor's decision not to file criminal charges against any officer based on the hazing investigation nor the passage of time with no enforcement action diminished the viability of this exemption. *Polovischak* at syllabus; *State ex rel. Thompson Newspapers, Inc. v. Martin* (1989), 47 Ohio St.3d 28, 546 N.E.2d 939, paragraph two of the syllabus. But only those portions of the hazing investigative records identifying the suspects were exempt, so respondents should have provided access to relators to the remainder of these records.

Therefore, relators may be entitled to attorney fees, but only insofar as their public records claims had merit, *i.e.*, for those portions of the investigative records that do not disclose the identities of uncharged suspects or are otherwise nonexempt records and the few payroll records that had been inadvertently excluded by respondents among the records that they provided to relators before this mandamus action. In other words, " 'the party against whom an award of fees [in an R.C. 149.43 public records action] is assessed should be responsible for those fees incurred only as a direct result of that party's failure to produce the public record.' " *State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Environmental Protection Agency* (2000), 88 Ohio St.3d 166, 175, 724 N.E.2d 411, 420, quoting *Gannett Satellite*, 81 Ohio St.3d at 1235, 690 N.E.2d at 12.

We hold that, under the circumstances of this case, relators are entitled to an award of attorney fees, but only insofar as their public records claims had merit. Therefore, we order relators to submit a new bill and documentation limited to the attorney fees expended on their meritorious public records claims.

Based on the foregoing, we grant the writ of mandamus compelling respondents to provide access to Spetrino investigative records, excepting those parts

that contain identifying information regarding uncharged suspects, to which the writ is denied.

*Writ granted in part*
*and denied in part.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., concurs in judgment.