THE STATE EX REL. ESPN, INC. *v.* OHIO STATE UNIVERSITY.

[Cite as *State ex rel. ESPN v. Ohio State Univ.*,

132 Ohio St.3d 212, 2012-Ohio-2690.]

*Public records—Mandamus sought to compel respondent to release records— R.C. 149.43(B)(2) and (3)—Exemptions from disclosure—Family Educational Rights and Privacy Act, 20 U.S.C. 1232g—Attorney-client privilege—Writ granted in part and denied in part.*

(No. 2011-1177—Submitted April 3, 2012—Decided June 19, 2012.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} This is a public-records action in which relator, ESPN, Inc. seeks certain records from respondent, the Ohio State University ("Ohio State"). Because ESPN has established its entitlement to the requested extraordinary relief for only a few of the requested records, we grant the writ only for those records. For the remaining records, we deny the writ.

**Facts**

{¶ 2} At a March 8, 2011 press conference, then Ohio State football coach Jim Tressel disclosed that in April 2010, he had received e-mails notifying him that certain Ohio State football players were connected to Eddie Rife, the owner of Fine Line Ink, a tattoo parlor, and the subject of a federal law-enforcement investigation. According to Tressel, the e-mails alerted him that players had exchanged Ohio State memorabilia for tattoos and that federal authorities had raided Rife's house and found $70,000 in cash and "a lot of Ohio State memorabilia."

**{¶ 3}** Tressel did not forward the e-mails to his superiors at Ohio State or to the National Collegiate Athletic Association ("NCAA"). Tressel's decision ultimately led to his resignation and an NCAA investigation. Tressel did, however, forward the e-mails to Ted Sarniak, a mentor to Ohio State football player Terrelle Pryor during his high-school and collegiate career. Sarniak is not employed by Ohio State or the NCAA, and he is not a law-enforcement officer.

**{¶ 4}** Since February 2011, Ohio State has received more than 100 public-records requests relating to the NCAA investigation from more than 38 members of the media representing at least 20 media organizations. After the March 8, 2011 Tressel press conference, ESPN, a global sports-entertainment company, had at least seven different individuals make at least 21 different public-records requests relating to Ohio State's athletic department. In response to these requests, Ohio State provided ESPN with over 700 pages of responsive documents, made more than 350 pages available on its website, and provided—as a courtesy—more than 4,200 pages of additional records that were requested by, and provided to, other members of the media.

**{¶ 5}** On April 20, 2011, ESPN requested that Ohio State provide it with access to and copies of nine different categories of records, including "[a]ll documents and emails, letters and memos related to NCAA investigations prepared for and/or forwarded to the NCAA since 1/1/2010 related to an investigation of Jim Tressel" and "[a]ll emails, letters and memos to and from Jim Tressel, Gordon Gee, Doug Archie and/or Gene Smith with key word Sarniak since March 15, 2007."

**{¶ 6}** Ohio State rejected ESPN's request for the Sarniak records by citing the confidentiality provisions of the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. 1232g(b), to support its denial of the request. Ohio State later denied ESPN's request for documents related to the NCAA investigation because it would "not release anything on the pending

investigation." In this e-mail, Ohio State attempted to respond to 16 separate requests by ESPN for public records.

{¶ 7} On May 11, 2011, by e-mail, ESPN requested access to and copies of seven different categories of records from Ohio State, including "[a]ny and all emails or documents listing people officially barred from student-athlete pass lists (game tickets) since January 1, 2007," and "[a]ny report, email or other correspondence between the NCAA and Doug Archie or any other Ohio State athletic department official related to any violation (including secondary violation) of NCAA rules involving the football program, since January 1, 2005." Ohio State rejected ESPN's requests because the university deemed them to be "overly broad per Ohio's public record laws."

{¶ 8} On July 11, 2011, ESPN filed this action for a writ of mandamus to compel Ohio State to provide access to the requested records. After the lawsuit was filed, Ohio State claimed that its communications with ESPN concerning the public-records requests were not intended to be its final word on the requests and were part of what the university believed to be continuing communications with ESPN concerning the requests. Following the commencement of this case, Ohio State worked with ESPN to help refine its public-records requests and to provide responsive documents. Ohio State submitted an answer to ESPN's complaint for a writ of mandamus, and we granted an alternative writ and issued a schedule for the submission of evidence and briefs. 129 Ohio St.3d 1472, 2011-Ohio-4751, 953 N.E.2d 839.

{¶ 9} This cause is now before the court for our consideration of the merits.

## Legal Analysis

### *R.C. 149.43(B)(2) and (3)*

{¶ 10} ESPN first claims that Ohio State committed per se violations of R.C. 149.43(B)(2) and (3) in its responses to ESPN's requests for pass lists and

3

documents regarding past and current NCAA violations and NCAA investigations. Ohio State initially denied the requests for pass lists and the documents regarding violations because they were "overly broad" and the documents regarding the current investigation because it would "not release anything on the pending investigation."

{¶ 11} We agree with ESPN's contentions that Ohio State violated R.C. 149.43(B)(2) and (3). For its denials based on overbreadth of the requests, Ohio State did not provide ESPN, in accordance with R.C. 149.43(B)(2), "with an opportunity to revise the request by informing the requester of the manner in which records are maintained by the public office and accessed in the ordinary course of the public office's or person's duties." And for Ohio State's denial of ESPN's request for documents concerning the current investigation, "R.C. 149.43 does not contain an 'ongoing investigation' exemption for public records." *State ex rel. Ohio Patrolmen's Benevolent Assn. v. Mentor*, 89 Ohio St.3d 440, 446, 732 N.E.2d 969 (2000).

{¶ 12} Nevertheless, although we conclude that Ohio State violated R.C. 149.43(B)(2) and (3) in this regard, we hold that ESPN did not specifically seek relief to remedy these violations. R.C. 149.43(C)(1) provides:

> *If a person allegedly is aggrieved* by the failure of a public office or the person responsible for public records to promptly prepare a public record and to make it available to the person for inspection in accordance with division (B) of this section or *by any other failure of a public office or the person responsible for public records to comply with an obligation in accordance with division (B) of this section, the person allegedly aggrieved may commence a mandamus action to obtain a judgment that orders the public office or the person responsible for the public record to comply*

4

> *with division (B) of this section*, that awards court costs and reasonable attorney's fees to the person that instituted the mandamus action, and, if applicable, that includes an order fixing statutory damages under division (C)(1) of this section.

(Emphasis added.) Although ESPN alleged that Ohio State failed to comply with R.C. 149.43(B)(2) and (3) in its complaint and briefs, ESPN did not ask that Ohio State be ordered to inform it of the way the university maintains its records concerning pass lists and NCAA violations so that ESPN could revise its requests, or to cite legal authority for the university's denial of the request for records relating to the NCAA investigation. Instead, ESPN limited its request for relief to a writ of mandamus to compel Ohio State to provide access to the requested records.

{¶ 13} Nor does ESPN seek statutory damages for Ohio State's claimed failure to comply with R.C. 149.43(B)(2) and (3), for which injury arising from the lost use of the requested information could be conclusively presumed. R.C. 149.43(C)(1). And insofar as ESPN seeks attorney fees, these violations comprise only a small portion of its true claims here.

{¶ 14} Finally, ESPN does not suggest in its argument that any claimed failure by Ohio State to comply with R.C. 149.43(B)(2) and (3) in its initial responses to its requests resulted in an unreasonable delay in Ohio State's ultimately complying with the requests—except for the redacted and withheld portions of the responsive records that ESPN contests.

{¶ 15} Based on the foregoing, under these particular facts, although Ohio State committed per se violations of R.C. 149.43(B)(2) and (3) in initially responding to ESPN's records requests, ESPN is not entitled to relief for these violations beyond that finding.

*Exemptions from Disclosure under R.C. 149.43*

**{¶ 16}** ESPN next claims that Ohio State erred in redacting some information and withholding other records in their entirety in responding to its records requests. "R.C. 149.43(A)(1)(v) exempts '[r]ecords the release of which is prohibited by state or federal law' from the definition of 'public record.' " *State ex rel. Dawson v. Bloom-Carroll Local School Dist.*, 131 Ohio St.3d 10, 2011-Ohio-6009, 959 N.E.2d 524, ¶ 27.

**{¶ 17}** Ohio State did not provide some of the records that might otherwise have been responsive to ESPN's request, claiming that those records were exempt under FERPA, the attorney-client privilege, and the work-product privilege. Each of these exemptions is next considered.

*FERPA—Prohibition on the Release of Records*

**{¶ 18}** Ohio State refused to release documents in response to ESPN's request for e-mails with the key word "Sarniak," claiming that those documents were exempt from disclosure based on FERPA. FERPA provides that

> [n]o funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein other than directory information, as defined in paragraph (5) of subsection (a) of this section) of students without the written consent of their parents to any individual, agency, or organization.

20 U.S.C. 1232g(b)(1).

**{¶ 19}** "Congress enacted FERPA under its spending power to condition the receipt of federal funds on certain requirements relating to the access and disclosure of student educational records." *Gonzaga Univ. v. Doe*, 536 U.S. 273,

6

278, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). "FERPA is directed to the conditions schools must meet to receive federal funds * * *." *Owasso Independent School Dist. No. I-011 v. Falvo*, 534 U.S. 426, 430, 122 S.Ct. 934, 151 L.Ed.2d 896 (2002).

{¶ 20} ESPN argues that FERPA does not prohibit the disclosure of the requested records by educational agencies and institutions like Ohio State—it merely penalizes those educational agencies and institutions that have a policy or practice of permitting the release of those records without parental consent by withholding federal funding.

{¶ 21} ESPN's contention lacks merit. "Under FERPA, schools and educational agencies receiving federal financial assistance must comply with certain conditions. [20 U.S.C.] 1232g(a)(3). *One condition specified in the Act is that sensitive information about students may not be released without parental consent*." (Emphasis added.) *Falvo* at 428.

{¶ 22} "Based upon these clear and unambiguous terms, a participant *who accepts federal education funds* is well aware of the conditions imposed by the FERPA and is clearly able to ascertain what is expected of it. Once the conditions and the funds are accepted, the school is indeed prohibited from systematically releasing education records without consent." (Emphasis sic and citations omitted.) *United States v. Miami Univ.*, 294 F.3d 797, 809 (6th Cir.2002). Although the court at footnote 11 limited this conclusion to federal government action to enforce FERPA, we agree with Ohio State that this limitation merely clarifies the means of enforcing FERPA and does not alter universities' duties under FERPA. In effect, " 'legislation enacted pursuant to the spending power [, like the FERPA], is much in the nature of a contract; in return for federal funds, the States agree to comply with federally imposed conditions.' " (Bracketed material sic.) *Id.* at 808, quoting *Pennhurst State School & Hosp. v. Halderman*, 451 U.S. 1, 17, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981).

**{¶ 23}** Ohio State received approximately 23 percent of its total operating revenues—over $919 million—in the 2010-2011 academic year from federal funds, and it is estimated that the university will receive the same amount of federal funds in the 2011-2012 academic year. Therefore, Ohio State, having agreed to the conditions and accepted the federal funds, was prohibited by FERPA from systematically releasing education records without parental consent.

**{¶ 24}** This result is consistent with the holdings of other state courts that have addressed this issue. *See Osborn v. Bd. of Regents of Univ. of Wisconsin Sys.*, 254 Wis.2d 266, 647 N.W.2d 158, ¶ 22 (2002); *Unincorporated Operating Div. of Indiana Newspapers, Inc. v. Trustees of Indiana Univ.*, 787 N.E.2d 893, 904 (Ind.App.2003); *DTH Publishing Corp. v. Univ. of North Carolina at Chapel Hill*, 128 N.C.App. 534, 496 S.E.2d 8, 12 (1998).

**{¶ 25}** Therefore, FERPA, if applicable, does constitute a prohibition on the release of records under R.C. 149.43(A)(1)(v).

*FERPA—Policy or Practice of Permitting*

*the Release of Education Records*

**{¶ 26}** Notwithstanding ESPN's claim to the contrary, if this court were to hold either that R.C. 149.43 does not recognize any exemption for FERPA or that personally identifiable information in records related to NCAA investigations is not covered by FERPA, we would be compelling educational agencies and institutions throughout Ohio to adopt a "policy or practice" permitting the release of education records. *See Miami Univ.*, 294 F.3d at 819-820.

*FERPA—Education Records*

**{¶ 27}** ESPN asserts that FERPA is inapplicable to the records responsive to its requests for documents related to Sarniak and the prior NCAA investigations because these records do not constitute "education records." For purposes of FERPA, the term "education records" means "those records, files, documents, and other materials which—(i) contain information directly related to

a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. 1232g(a)(4)(A).

{¶ 28} ESPN first claims that the requested records are not education records because records concerning Sarniak, a Pennsylvania businessman who was the mentor to an Ohio State football player implicated in the NCAA investigation concerning trading memorabilia for tattoos, and records relating to compliance by Ohio State coaches and administrators with NCAA regulations do not directly involve Ohio State students or their academic performance, financial aid, or scholastic performance. ESPN relies on language from this court's opinion in *State ex rel. Miami Student v. Miami Univ.*, 79 Ohio St.3d 168, 171-172, 680 N.E.2d 956 (1997), in which the court granted a writ of mandamus to compel the disclosure of student disciplinary proceedings for 1993 through 1996 by reasoning that because the cases, which involved infractions of student rules and regulations, were "nonacademic in nature," the records were not "education records" subject to FERPA.

{¶ 29} Following our decision in *Miami Student*, however, the United States Court of Appeals for the Sixth Circuit held that student disciplinary records were education records subject to FERPA and permanently enjoined Miami University and Ohio State from releasing records in violation of FERPA. *Miami Univ.*, 294 F.3d 797. The court held that "[u]nder a plain language interpretation of FERPA, student disciplinary records are education records because they directly relate to a student and are kept by that student's university. Notably, Congress made no content-based judgments with regard to its 'education records' definition." *Id.* at 812.

{¶ 30} Upon consideration of our opinion in *Miami Student* and the Sixth Circuit Court of Appeals' opinion in *Miami Univ.*, we agree with the Sixth Circuit and hold that the records here generally constitute "education records" subject to FERPA because the plain language of the statute does not restrict the term

"education records" to "academic performance, financial aid, or scholastic performance." Education records need only "contain information directly related to a student" and be "maintained by an educational agency or institution" or a person acting for the institution. 20 U.S.C. 1232g(a)(4)(A)(i) and (ii). The records here—insofar as they contain information identifying student-athletes— are directly related to the students.

{¶ 31} In fact, in *Miami Student*, we permitted Miami University to redact certain personally identifiable information in accordance with FERPA. *Miami Student*, 79 Ohio St.3d at 172, 680 N.E.2d 956. "With these court-imposed redactions, the mandamus [granted by this court in *Miami Student*] appears to comport with the FERPA's requirements." *Miami Univ.*, 294 F.3d at 811, citing *Miami Student* at 173 (Cook, J., dissenting). Thus, the records here are education records in that they contain information that is directly related to students.

{¶ 32} ESPN's next claim, that the requested records do not constitute "education records" under FERPA because they are not "maintained by an educational agency or institution or by a person acting for such agency or institution," 20 U.S.C. 1232g(a)(4)(A)(ii), also lacks merit. Ohio State submitted sufficient evidence to establish that the responsive records are "maintained" for purposes of FERPA. Ohio State's Department of Athletics retains copies of all e-mails and attachments sent to or by any person in the department; the e-mails cannot be deleted. The department also retains copies of all documents scanned into electronic records, which are organized by student-athlete. Ohio State has additionally collected documents related to its investigation of student-athletes who exchanged memorabilia for tattoos and Tressel's failure to report that activity that were requested by the NCAA and has kept those documents in two secure electronic files. These records are not similar to the transient records involved in *Falvo*, 534 U.S. at 433, 122 S.Ct. 934, 151 L.Ed.2d 896.

**{¶ 33}** Therefore, Ohio State properly withheld identifying information concerning the student-athletes by redacting it from the records that the university released. *See* 34 C.F.R. 99.3, which defines "personally identifiable information."

**{¶ 34}** Nevertheless, a review of the sealed records that were responsive to ESPN's request but were withheld based on FERPA indicates that Ohio State should provide access to these records after redacting the personally identifiable information. An e-mail chain between Tressel, the Ohio State athletics department official in charge of compliance, attorneys, and other officials scheduling a meeting includes no personally identifiable information concerning any student-athlete. In e-mails to schedule a meeting to formulate a compliance plan for one of the student-athletes, aside from the name of the student-athlete and a person who agreed to attend the meeting, no personally identifiable information is included. Another document refers to one person's request to obtain a disability-insurance policy on behalf of a student-athlete, and with those names redacted, the document would not contain personally identifiable information. There are also two letters from Ohio State's athletics department compliance director to the parents of a student-athlete concerning preferential treatment. With the personally identifiable information concerning the names of the student-athlete, parents, parents' addresses, and the other person involved redacted, FERPA would not protect the remainder of these records.

**{¶ 35}** Therefore, although the majority of the requested records were properly redacted before being provided to ESPN, ESPN is entitled to access to redacted copies of these few records that were completely withheld from it based on FERPA.

*Attorney-Client Privilege*

**{¶ 36}** Ohio State properly withheld the remaining requested records based on attorney-client privilege. *See State ex rel. Besser v. Ohio State Univ.*, 87 Ohio St.3d 535, 542, 721 N.E.2d 1044 (2000).

**{¶ 37}** These records include requests from Ohio State officials for legal advice and interpretation, communications from or between the attorneys providing legal advice or information to Ohio State, and investigatory fact-finding related to the legal advice. These are covered by the attorney-client privilege.

**{¶ 38}** ESPN's contention that Ohio State cannot rely on attorney-client privilege to shield these records is unfounded because "an attorney does not become any less of an attorney by virtue of state agency employment," *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, ¶ 29, the attorney-client privilege applies to agents working on behalf of legal counsel, *see Am. Motors Corp. v. Huffstutler*, 61 Ohio St.3d 343, 346, 575 N.E.2d 116 (1991), and there is no requirement in public-records mandamus cases that public offices or officials must "conclusively establish" the privilege by producing agreements retaining agents or joint-defense agreements with attorneys representing other clients. Therefore, Ohio State properly withheld the remaining requested records based on the attorney-client privilege.[1]

*Attorney Fees*

**{¶ 39}** Because Ohio State complied with the vast majority of its obligations under R.C. 149.43 in responding to ESPN's records requests, and ESPN's claims are largely without merit, we deny ESPN's request for attorney fees. *See State ex rel. Mahajan v. State Med. Bd. of Ohio*, 127 Ohio St.3d 497, 2010-Ohio-5995, 940 N.E.2d 1280, ¶ 64 (denying request for attorney fees when public-records claims are mostly lacking in merit).

---

1. Ohio State also withheld some of the requested records based on the work-product privilege. Because all of the records for which it requested application of this privilege were also covered by the previously discussed attorney-client privilege, we need not address this contention.

12

**Conclusion**

**{¶ 40}** "The Public Records Act serves a laudable purpose by ensuring that governmental functions are not conducted behind a shroud of secrecy. However, even in a society where an open government is considered essential to maintaining a properly functioning democracy, not every iota of information is subject to public scrutiny. Certain safeguards are necessary." *State ex rel. Wallace v. State Med. Bd. of Ohio*, 89 Ohio St.3d 431, 438, 732 N.E.2d 960 (2000). "The General Assembly has provided these safeguards by balancing competing concerns and providing for certain exemptions from the release of public records pursuant to R.C. 149.43." *Mahajan*, 127 Ohio St.3d 497, 2010-Ohio-5995, 940 N.E.2d 1280. By incorporating exemptions to disclosure provided by other federal and state law, R.C. 149.43(A)(1)(v) acknowledges these competing concerns that weigh in the favor of nondisclosure.

**{¶ 41}** Because, for the most part, Ohio State established that FERPA and the attorney-client privilege prohibited the disclosure of the requested records, we deny the writ to that extent. For those limited records that should have been disclosed—at Respondent's Evidence, Vol. III, Part 2, pages 668, 829-835, 859-863, 999-1001, and 1009-1012, following the redaction of personally identifiable information, that is, the names of the student-athlete, his parents, his parents' addresses, and the person associated with the student-athlete mentioned therein—and were thus not exempt from disclosure based on FERPA, however, we grant the writ. We also deny ESPN's request for attorney fees.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Graydon, Head & Ritchey, L.L.P., and John C. Greiner, for relator.

Michael DeWine, Attorney General, Alexandra T. Schimmer, Solicitor General, David M. Lieberman, Deputy Solicitor, and Damian W. Sikora and Todd R. Marti, Assistant Attorneys General, for respondent.

Carter M. Stewart, United States Attorney, Benjamin C. Glassman, Appellate Chief, and Alisa B. Klein, urging denial of the writ for amicus curiae United States.

Vorys, Sater, Seymour and Pease, L.L.P., John J. Kulewicz, and Daniel E. Shuey; and Ada Meloy, urging denial of the writ for amici curiae American Council on Education, American Association of Collegiate Registrars and Admissions Officers, American Association of Community Colleges, Association of American Universities, Association of Public and Land-Grant Universities, and NASPA-Student Affairs Administrators in Higher Education.

Laura Osseck and Kristen Henry; Hollie Reedy; Community Legal Aid Services, Inc., Christina M. Janice, and Paul E. Zindle; and Northeast Ohio Legal Services and James B. Callen, for amici curiae Ohio Legal Rights Service, Ohio School Boards Association, Community Legal Aid Services, Inc., and Northeast Ohio Legal Services.

_____