[Cite as *Hilliard City School Dist. v. Columbus Div. of Police*, 2017-Ohio-8052.]

| HILLIARD CITY SCHOOL DISTRICT | Case No. 2017-00450-PQ |
|---|---|
| Requester | Special Master Jeffery W. Clark |
| v. | REPORT AND RECOMMENDATION |
| COLUMBUS DIVISION OF POLICE | |
| Respondent | |

{¶1} On November 29, 2016, the Hilliard City School District ("Hilliard SD") made a public records request to the Columbus Division of Police ("Columbus PD"):

a. "Malisa Blizzard, a bus driver for Hilliard City Schools, alleged she was sexually assaulted on October 21, 2016, while she was in route [sic] driving a school bus for the School District. As the District's counsel, I am requesting a copy of the complete investigative file for this matter, including but not limited to all records, documents, and photographs relating to the investigation of Ms. Blizzard's alleged incident."

(Requester's Exhibit 1.) On or about December 28, 2016, Columbus PD responded by producing transcripts of phone calls to the police and the Preliminary Investigation worksheet form, explaining that the remainder of the responsive records were excepted from release as either confidential law enforcement investigatory records, medical records, and/or records the release of which is prohibited by state or federal law. (Complaint ¶ 16-17; Requester's Exhibit 2.)

{¶2} Hilliard SD subsequently obtained a subpoena from the Ohio Industrial Commission "to the Columbus Division of Police for the complete investigative file including but not limited to all records, documents and photographs relating to the investigation of the alleged [October 21, 2016 Malisa Blizzard] incident." (Complaint ¶ 19.) In response to the subpoena, Columbus PD provided a November 9, 2016 email from Kimberly Sharrock to David Pelphrey (Requester's Exhibit 4), nine security camera video files, and thirty-eight pages of other investigatory documents. (Respondent's

July 31, 2017 "Records Produced" CD.)    Columbus PD also provided a list of investigatory documents that it withheld from its response to the subpoena,

> b. "because their submission would be contrary to law. Specifically prohibited from production include: medical records (HIPAA protected), documents/photographs/videos or other items that would violate Malisa Blizzard's Constitutional right of privacy, and other items that are prohibited from release by Ohio or Federal law."

(Requester's Exhibit 3.)  At least 33 of the 67 bullet-point items listed as withheld from response to the subpoena are described as records originally obtained from Hilliard SD. ("Records Produced" CD, p. 1-2.)[1]

{¶3} On May 17, 2017, Hilliard SD filed a complaint under R.C. 2743.75 alleging denial of access to public records in violation of R.C. 149.43(B) by the Columbus PD. The case proceeded through mediation, and on June 23, 2017, the court was notified that mediation had terminated without resolution.  On June 30, 2017, Columbus PD filed its response and motion to dismiss.  On July 31, 2017, per court order, Columbus PD filed a CD containing an unredacted copy of all records responsive to the request, and an affidavit identifying specific records or portions of records it asserts are covered by each alleged public records exception.  On August 31, 2017, Hilliard filed a reply memorandum.

{¶4} R.C.149.43(C) provides that a person allegedly aggrieved by a violation of division (B) of that section may either commence a mandamus action, or file a complaint under R.C. 2743.75.  In mandamus actions alleging violations of R.C. 149.43(B), a relator must establish by "clear and convincing evidence" that they are entitled to relief. *State ex rel. Miller v. Ohio State Hwy. Patrol,* 136 Ohio St.3d 350, 2013-Ohio-3720, 995 N.E.2d 1175, ¶ 14.  As for actions under R.C. 2743.75 alleging violations of R.C. 149.43(B), neither party has suggested that another standard should apply, nor is

---

[1] The purpose behind a public records request is irrelevant to the right of access to the records. R.C. 149.43(B)(4); *Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, ¶ 11-12.  Requester's worker's compensation litigation is referenced only to identify investigatory records that were withheld from, provided to, and/or already possessed by Hilliard SD.  This court has no jurisdiction to determine the parties' legal rights regarding the subject records, other than pursuant to R.C. 149.43(B).

another standard prescribed by statute. R.C. 2743.75(F)(1) states that such claims are to be determined through "the ordinary application of statutory law and case law * * *." Accordingly, the merits of this claim shall be determined under a standard of clear and convincing evidence, i.e., "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

In its prayer for relief, Hilliard SD limits its claim in this case as follows:

> c. "Requester respectfully request this court conduct [sic] an in camera inspection of the unredacted Columbus Division of Police Progress of Investigation report and the Columbus Police Crime Laboratory reports, and the requested records listed in paragraph 25 of this Complaint, find Respondent's denial of its November 29, 2016 public records request violated R.C. 149.43, and order Respondent to immediately release the improperly withheld records."

(Complaint, p. 15.) This report and recommendation is therefore confined to analysis of the redactions made to the Progress of Investigation and Crime Laboratory reports, and the withholding of the specific documents listed in paragraph 25 of the complaint, e.g.:

> "a. DVD recording of an officer interview with the employee;
> b. 7 CD's of photographs;
> c. First Responder Letter by CPD Officer Chris Jones;
> d. Det. Paul Siniff's summary of his interview with the employee;
> e. Property inventory list for sexual assault kit;
> f. Property inventory list for physical evidence and DNA swabs;
> g. Property request for latents;
> h. Evidence collection list and photograph list (CSSU);
> i. Photos taken at the scene by CSSU;
> j. Sane Nurse Forensic Exam Forms and results."

**Motion to Dismiss**

{¶5} In construing a motion to dismiss pursuant to Civ.R. 12(B)(6), the court must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d

190, 192, 532 N.E.2d 753 (1988).  Then, before the court may dismiss the complaint, it must appear beyond doubt that plaintiff can prove no set of facts entitling him to recovery. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975). The unsupported conclusions of a complaint are, however, not admitted and are insufficient to withstand a motion to dismiss. *Mitchell* at 193.

{¶6} In ruling on the motion, the court is mindful that the policy underlying the Public Records Act is that "open government serves the public interest and our democratic system." *State ex rel. Dann v. Taft*, 109 Ohio St.3d 364, 2006-Ohio-1825, 848 N.E.2d,     ¶ 20. "[O]ne of the salutary purposes of the Public Records Law is to ensure accountability of government to those being governed." *State ex rel. Strothers v. Wertheim*, 80 Ohio St.3d 155, 158, 684 N.E.2d 1239 (1997).  Therefore, R.C. 149.43 must be construed "liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records." *State ex rel. Cincinnati Enquirer v. Hamilton Cty.,* 75 Ohio St.3d 374, 376, 662 N.E.2d 334 (1996).  However, if a court determines that records withheld from release are exempt from disclosure, a complaint based solely on denial of access to the records is subject to dismissal for failure to state a claim upon which relief may be granted.  *Perry v. Onunwor*, 8th Dist. Cuyahoga No. 78398, 2000 Ohio App. LEXIS 5893, *3-5 (December 7, 2000); *State ex rel. Welden v. Ohio State Med. Bd.*, 10th Dist. Franklin No. 11AP-139, 2011-Ohio-6560, ¶¶ 2, 13-15.

{¶7} Columbus PD moves to dismiss the complaint on the grounds that the withheld records are exempt from disclosure for the following reasons: 1)  the victim named in the records has a constitutional right to privacy in the intimate details of the alleged sexual assault, 2) all the withheld records are subject to the confidential law enforcement investigatory records exception, and 3) the sexual assault nurse examiner's records are subject to the medical records exception. Columbus PD bears the burden of proving the application of a particular exception to each specified record:

> d. "Exceptions to disclosure under the Public Records Act, R.C. 149.43, are strictly construed against the public-records custodian, and the custodian

has the burden to establish the applicability of an exception. * * * A custodian does not meet this burden if it has not proven that the requested records fall squarely within the exception."

*State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, ¶ 10.

**Medical Records**

{¶8} R.C. 149.43(A)(1) provides that "'[p]ublic record' does not mean * * *: (a) Medical records." Respondent asserts that records created by a sexual assault nurse examiner, obtained and used by Columbus PD for its investigation of alleged sexual assault, are exempt as "medical records." The Act defines medical records as follows:

    e. "'Medical record' means any document or combination of documents, except births, deaths, and the fact of admission to or discharge from a hospital, that pertains to the medical history, diagnosis, prognosis, or medical condition of a patient and that is generated and maintained in the process of medical treatment."

R.C. 149.43(A)(3). The definition has three conjunctive requirements:

1. The document must pertain to the medical history, diagnosis, prognosis, or medical condition of a patient, and,

2. The document must have been generated in the process of medical treatment, and,

3. The document must be maintained in the process of medical treatment.

A document that pertains to diagnosis and treatment, but is held and used by an agency that does not maintain the document in the process of medical treatment, does not meet the definition. The Ohio Supreme Court concludes that,

    f. "In order to fit within the 'medical record' exception to the public records law, 'a record must pertain to a medical diagnosis *and* be generated and maintained in the process of medical treatment.' (Emphasis *sic.*) *State, ex rel. Toledo Blade Co. v. Telb* (C.P. 1990), 50 Ohio Misc.2d 1, 10, 552 N.E.2d 243, 251. In *Telb*, the court held that to be excepted from disclosure, the records sought must meet the conjunctive requirements of the statute. In the instant matter, records held by the Ombudsman Office may involve diagnosis and treatment, but they are not 'maintained in the

process of medical treatment' and therefore are not exempt from disclosure."

*State ex rel. Strothers v. Wertheim*, 80 Ohio St.3d 155, 158, 684 N.E.2d 1239 (1997); accord *State v. Rohrer*, 4th Dist. Ross No. 14CA3471, 2015-Ohio-5333, ¶ 51-58 (psychiatric reports were generated for purposes of continued commitment proceedings), discretionary appeal not allowed by *State v. Rohrer*, 145 Ohio St.3d 1459, 2016-Ohio-2807; *Ward v. Johnson's Indus. Caterers*, 10th Dist. Franklin No. 97APE11-1531, 1998 Ohio App. LEXIS 2841, *18-19 (June 25, 1998); *State ex rel. Strothers v. Rish*, 8th Dist. Cuyahoga No. 81862, 2003-Ohio-2955, ¶ 24-32.

{¶9} The records at issue were prepared by a sexual assault nurse examiner (SANE). Respondent states that a SANE is a nurse with special training in collecting forensic evidence from sexual assault victims; that the SANE's exam to collect forensic evidence is a head to toe medical evaluation; and that the SANE does not work on behalf of Columbus PD. (Pelphrey Aff., ¶ 23-25.) Columbus PD details the nature and use of records created by the SANE as follows:

> g. "The records created by the sexual assault nurse examiner are records generated and maintained in the process of medical treatment by a nurse at Grant Hospital, but are also used by the Columbus Division of Police and the Franklin County Prosecutor's Office *for use in criminal investigations and prosecutions.*"

(Emphasis added.) (July 25, 2017 Affidavit of Azizah Tabler, ¶ 8, filed with Respondent's Responsive Records.) Significantly, respondent does not assert that the Columbus PD itself maintained these records "in the process of medical treatment."

{¶10} The content and internally expressed purpose of these SANE records are consistent with the gathering of evidence for investigation and prosecution of the alleged offenses, but do not support their status as "records generated and maintained in the process of medical treatment." The SANE records (as listed in Tabler Aff., ¶ 7.) commence with an authorization and release form affirming the victim's understanding that the examination is a medical forensic examination to obtain evidence for the

prosecution of alleged assault offenses, and authorizing the healthcare providers and hospital to provide physical evidence, photographs, hospital records, and any other information obtained from examination and treatment to the Columbus Police Department and/or Franklin County Prosecutor's Office for use in criminal investigation and prosecution. (Responsive Records CD, Bates No. 269.) On the same page, the SANE nurse affirms that she performed the medical forensic examination to obtain physical evidence, photographs, hospital records, and any other information from the alleged offense. The ensuing examination forms contain a limited medical history, the victim's description of the assault, a description of clothing, a list of evidence collected and given to law enforcement, a one-sentence summary of the forensic examination, vital signs, a list of 80 photographs, anatomical outlines identifying photograph locations, and photographs of the victim and clothing. (Responsive Records CD, Bates Nos. 270-361.) None of the SANE records recommend or discuss medical treatment. The SANE records appear to consist solely of sexual assault evidence collection. Respondent has thus not met its burden of proof to show that Columbus PD maintained these documents "in the process of medical treatment," *Strothers, Id.*, or indeed that they were initially generated in the process of medical treatment. I conclude that the SANE documents in this matter do not qualify under the "medical records" exception in R.C. 149.43(A)(1)(a) and (A)(3).

{¶11} Due to the above conclusion, it is unnecessary to address application of purported medical release forms submitted by the requester (Requester's August 14, 2017 notice of submission of signed medical release), or requester's assertion that medical records ordered disclosed would remain confidential under statutes and administrative codes applicable to Ohio workers' compensation claims. (Complaint ¶¶ 26, 49-50.) Finally, although respondent asserted the Health Information Portability and Accountability Act (HIPAA) in its response to the Industrial Commission subpoena, it properly omits HIPAA here, as HIPAA does not supersede state disclosure

requirements. *State ex rel. Cincinnati Enquirer v. Daniels*, 108 Ohio St.3d 518, 2006-Ohio-1215, ¶¶ 25-26, 34.

### Confidential Law Enforcement Investigatory Work Product

{¶12} Respondent asserts that the withheld records constitute "investigatory work product" of a criminal investigation that has not concluded.[2] R.C. 149.43(A)(1) provides that "'[p]ublic record' does not mean * * *: (h) Confidential law enforcement investigatory records." R.C. 149.43(A)(2) defines "confidential law enforcement investigatory records" ("CLEIRs"), in pertinent part, as:

> h. "any record that *pertains to a law enforcement matter of a criminal*, quasi-criminal, civil, or administrative *nature,* but only to the extent that the release of the record would create a high probability of disclosure of any of the following:

> * * *

> (c) Specific confidential investigatory techniques or procedures *or specific investigatory work product.*"

(Emphasis added.) Application of the CLEIRs exception for "investigatory work product" thus involves a two-part test: first, whether the withheld records pertain to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature; and second, whether the release of those records would create a high probability of disclosure of specific investigatory work product. *State ex rel. Miller v. Ohio State Highway Patrol*, 136 Ohio St.3d 350, 2013-Ohio-3720, 995 N.E.2d 1175, ¶ 25.

{¶13} Hilliard SD asserts that it believes Ms. Blizzard's injuries were self-inflicted, and therefore no criminal offense occurred. Hilliard SD alternatively argues that even if the investigation was of a criminal nature, the investigation has concluded and the investigatory work product exception has expired.

---

[2] Although respondent also asserted the CLEIRs exemption for "Information that would Endanger Life/Physical Safety (O.R.C. 149.43(A)(2)(d))" in its initial response to requester (Requester's Exhibit 2.), it no longer asserts this exception to any of the withheld records. (Tabler Aff., ¶ 6.)

**Pertaining to a Law Enforcement Matter of a Criminal Nature**

{¶14} For the first prong of the CLEIRs exception, a record "pertains to a law enforcement matter of a criminal nature" if it arises from a specific suspicion of violation of criminal law, which the record-keeping agency has the authority to investigate or enforce. *State ex rel. Multimedia, Inc. v. Snowden*, 72 Ohio St.3d 141, 143, 647 N.E.2d 1374 (1995); *Enquirer v. ODPS* at ¶ 39. The Columbus PD sexual assault unit administrator testified that the initial response by detectives to the incident involving Ms. Blizzard was based upon a belief that a crime occurred, and that the investigation has proceeded as if a crime occurred. (Pelphrey Aff., ¶ 5-10.) The suspected criminal offenses listed in the progress of investigation forms are "Rape/Kidnapping/Felonious Assault" (Records Produced CD, pp. 3-9, 13, 15, 17, 19, 21, 23, 26 and 29), and these are criminal offenses that the Columbus PD has jurisdiction to investigate and enforce. On the face of this testimony and the records themselves, the investigatory file pertains to a law enforcement matter of a criminal nature.

{¶15} Although Hilliard SD does not dispute that the investigation by the Columbus PD sexual assault unit arose and proceeded as described above, it disputes the criminal nature of the investigation by stating that it can support "a reasonable and articulable conclusion that the employee's reported injuries were purposely self-inflicted and there was no assailant as alleged." (Complaint, ¶¶ 13, 24.) Requester's rhetorical conclusion carries no more weight in determining whether Columbus PD's records pertain to an investigation "of a criminal nature" than the protests of a criminal defendant to the same effect. Regardless, the issue for this court is not the merits or ultimate outcome of the investigation, but only whether a "law enforcement matter of a criminal nature" was commenced and investigated.

{¶16} To be sure, a law enforcement agency can be challenged if it seeks to apply CLEIRs to records of a matter involving merely personnel and internal inquiries, *State ex rel. Police Officers for Equal Rights v. Lashutka*, 72 Ohio St.3d 185, 648 N.E.2d 808 (1995), or "when it is not evident that a crime has occurred, [and] the

investigative materials are compiled by law enforcement officials to determine if any crime has occurred." *State ex rel. Leonard v. White*, 75 Ohio St.3d 516, 518-519, 664 N.E.2d 527 (1996). Neither of these exceptions applies to this case. Columbus PD's progress of investigation form, handwritten witness statements, and crime laboratory reports (Records Produced CD, p. 3-41.) report that shortly after 7:00 a.m. on October 21, 2016, Ms. Blizzard entered the lobby of 5300 Nike Drive in Hilliard, Ohio. She was described by witnesses as covered in blood, cuts on her forehead, cuts in blouse and pants, chunks of hair on her pants, with her hands zip-tied. They report that she was sobbing and that she described being assaulted in a bus parked nearby. Ms. Blizzard was transported by ambulance to a hospital for treatment, where two Columbus PD detectives interviewed her. Evidence was collected from the crime scene, and forensic evidence was tested at the Columbus Police Crime Laboratory. A sexual assault nurse examiner conducted an examination and processed a sexual assault kit. The Columbus PD Responsive Records CD (filed under seal) contains additional interviews, photographs, forensic reports, and investigatory records. The supervising detective sergeant states that the fact that Columbus PD has been unable to identify and charge a suspect, or empirically prove that another individual was at the crime scene, does not mean that a crime did not occur. (Pelphrey Aff., ¶ 13.)

{¶17} I find that the evidence showing that the withheld records pertain to "a law enforcement matter of a criminal nature" substantially outweighs requester's bare assertion to the contrary. I conclude that respondent has met its burden of proof in satisfying the first prong of the CLEIRs exception.

**Specific Investigatory Work Product**

{¶18} "Specific investigatory work product" includes "any notes, working papers, memoranda or similar materials" and all other "information assembled by law enforcement officials, in connection with a probable or pending criminal proceeding." *Cincinnati Enquirer v. Ohio Dep't of Pub. Safety,* 148 Ohio St.3d 433, 2016-Ohio-7987 at ¶ 41. In the seminal case of *State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420,

434, 639 N.E.2d 83 (1994), the Supreme Court stated that "[t]his definition (working papers) is broad enough to bring under its umbrella any records compiled by law enforcement officials." *See State ex rel. Caster v. Columbus*, Slip Op. 2016-Ohio-8394, ¶ 25-30.

{¶19} In *Steckman* and its progeny, the Court clarifies that the law enforcement investigatory work product exception does not include "ongoing routine offense and incident reports," *Id.*, paragraph five of the syllabus, as "incident reports initiate criminal investigations but are not part of the investigation." (Citations omitted.) *State ex rel. Beacon Journal Publ. Co. v. Maurer*, 91 Ohio St.3d 54, 56, 741 N.E.2d 511 (2001). "Records 'even further removed from the initiation of the criminal investigation than the form reports themselves,' such as 9-1-1 recordings, are also public records." (Citation omitted) *Miller v. OSHP*, 2013-Ohio-3720 at ¶ 26. Also, unquestionably nonexempt documents do not become exempt simply because they are placed in an investigative file. *State ex rel. Ohio Patrolmen's Benevolent Assn. v. Mentor*, 89 Ohio St.3d 440, 448, 732 N.E.2d 969 (2000) (copies of newspaper articles and statutes); *State ex rel. WLWT-TV5 v. Leis*, 77 Ohio St.3d 357, 361, 673 N.E.2d 1365 (1997) (copies of the indictment, statutes, news articles, blank charitable organization registration form, organization's yearbook and buyer's guide, transcript of plea hearing, videotape of news reports, and campaign committee finance report), overruled on other grounds by *State ex rel. Caster v. Columbus*, Slip Op. 2016-Ohio-8394, ¶ 47.

{¶20} In response to Hilliard SD's request for investigatory records, Columbus PD provided transcripts of phone calls to the police, and the preliminary investigation worksheet form (which requester did not attach but does not dispute as constituting the required, non-exempt 9-1-1 and incident report records). (Complaint ¶ 16.) The additional investigatory records that were produced to Hilliard SD as the result of a subpoena from a separate legal proceeding are no longer "withheld" for the purposes of the instant action, other than to the extent that they contain redactions. On review of the unredacted withheld records in this case ("Responsive Records" CD), I find that all

of the documents withheld in their entirety, as well as the portions of investigatory records produced per subpoena, are the notes, working papers, memoranda or similar materials assembled by Columbus PD in connection with a probable criminal proceeding.

{¶21} To address a particular subset of the withheld items, many are photographs of the crime scene and of the victim's injuries. Among the few Ohio cases addressing photographs contained in investigative files, one court has held that "witness statements, police reports, photographs, laboratory tests, and tape recordings are exempt from release as public records." *State ex rel. Simms v. Cleveland Police Dep't*, 8th Dist. Cuyahoga No. 72949, 1997 Ohio App. LEXIS 4823, *3 (October 30, 1997); *but contra State ex rel. Fields v. Cervenik*, 8th Dist. Cuyahoga No. 86889, 2006-Ohio-3969, ¶ 17-21 (photographs of crime scene found not exempt under any exception). In analyzing dash-cam recordings of traffic offenses and officer pursuit, the Supreme Court recently found case-by-case review appropriate to determine whether visual recordings contain images "that have concrete investigative value to the prosecution." *Cincinnati Enquirer v. Ohio Dep't of Pub. Safety, 148 Ohio St.3d 433, 2016-0hio-7987*, ¶¶ 45, 50. The photographs in this case all appear to have been created by respondent for their investigative value to its criminal investigation, and none resemble the "incidental" video recordings identified in *Enquirer*.

{¶22} I conclude that all of the withheld records meet the definition of "specific investigatory work product"

**Investigatory Work Product Exception Has Not Expired**

{¶23} Hilliard SD argues that the investigatory work product exception either never applied to Columbus PD's investigative file, or that it has expired.

{¶24} There is no express time limit to the CLEIRs exceptions in the Public Records Act, and the other second-prong CLEIRs exceptions have been held to remain applicable "so long as the conditions justifying those exceptions still exist." *State ex rel.*

*Caster v. Columbus*, Slip. Op. 2016-Ohio-8394, ¶ 48. In contrast, the specific investigatory work product exception applies only so long as the record is maintained "in connection with a probable or pending criminal proceeding." *Steckman*, paragraph five of the syllabus. Columbus PD states that the investigation in this case is currently inactive due to the exhaustion of investigative leads, and there is thus no "pending" criminal proceeding in the case. (Pelphrey Aff., ¶ 14.) However,

> i. "a criminal proceeding is 'probable' within the meaning of paragraph five of the *Steckman* syllabus and 'highly probable' under *Police Officers* [*for Equal Rights v. Lashutka,* 72 Ohio St.3d 185, 188, 648 N.E.2d 808 (1995)] even where the police have not yet identified a suspect, as long as it is clear that a crime has in fact been committed."

*Leonard v. White*, 75 Ohio St.3d at 518. The *Leonard* Court found that almost immediately after the victim's death the police considered it a suicide, and that if the Court adopted a construction that the lack of a suspect meant that there was no probable criminal proceeding, "police departments' efforts to effectively investigate and apprehend criminals would be frustrated." *Id.* The Court accordingly held that,

> j. "Once it is evident that a crime has occurred, investigative materials developed are necessarily compiled in anticipation of litigation and so fall squarely within the *Steckman* definition of work product. Consequently, we hold that where it is evident that a crime has occurred, although no suspect has yet been charged, any notes, working papers, memoranda, or similar materials compiled by law enforcement officials in anticipation of a subsequent criminal proceeding are exempt from disclosure as R.C. 149.43(A)(2)(c) work product."

*Id.*; accord *State ex rel. Master v. Cleveland*, 76 Ohio St.3d 340, 341-342, 667 N.E.2d 974 (1996) ("*Master II*"). Law enforcement investigatory work product records "continue to be exempt despite the passage of time, [or] the lack of enforcement action, * * *." (Citations omitted.) *State ex rel. National Broadcasting Co. v. Cleveland ("NBC II")*, 57 Ohio St.3d 77, 78-80, 566 N.E.2d 146 (1991); *accord State ex rel. Bonnell v. Cleveland*, 8th Dist. Cuyahoga No. 64854, 1993 Ohio App.LEXIS 4225, *9-10 (August 26, 1993); *see also State ex rel. Polovischak v. Mayfield,* 50 Ohio St.3d 51, 552

N.E.2d 635 (1990), syllabus. This does not mean that the exception extends indefinitely.[3] As Columbus PD notes, "the exception would cease when there was no possibility of a criminal proceeding, such as after the expiration of the statute of limitations for a particular crime." (Response, p. 8.) The exception would also expire if the suspect died, or prosecution was declined, or the agency conclusively determined that no crime had occurred. *See Bentkowski v. Trafis,* 8th Dist. Cuyahoga No. 102540, 2015-Ohio-5139, 56 N.E.3d 230, ¶¶ 4-7, 24-26 (prosecutor concluded that no crime was committed). For a non-exhaustive list of case clearance codes, and descriptions of circumstances that may terminate the possibility of future criminal proceeding, *see* the Ohio Uniform Incident Report Training Manual, p. 3-5.[4] On the other end of potential outcomes of criminal investigation, the Supreme Court holds that the work product exception "does not extend beyond the completion of the trial for which the information was gathered." *Caster* at ¶ 47.

{¶25} Hilliard SD states that Columbus PD can show only the possibility, not probability, of anticipated criminal proceedings in this case, and relies on Sergeant Pelphrey's statement that "CPD has exhausted all leads based upon the information that is currently known" although "the case could be active again at any time if additional information becomes known to the detectives or a new lead is presented or developed." (Reply, p. 7.) Hilliard SD attaches significance to the fact that Sergeant Pelphrey does not affirmatively assert "probable" or "pending" criminal proceedings in his affidavit (*Id.*). It relies on an email from Kimberly Sharrock LPE (latent print examiner) to the investigators stating, "I have to double check and make sure we have printed out all of the photos before I can say we are finished with this case," (Complaint, ¶¶ 22, 38, Requester's Exhibit 4) as evidence that the investigation

---

[3] Nor are the CLEIRs exceptions mandatory, as the statutory wording "are not public records" means only that a public office is not *required* to disclose the records, but may do so at its discretion. 2000 Ohio Op. Att'y Gen. No. 021; 2001 Ohio Op. Att'y Gen. No. 041.

[4] Ohio Department of Public Safety Office of Criminal Justice Services, *Ohio Uniform Incident Report (UIR) Training Manual* (August 2011) http://ocjs.ohio.gov/oibrs/Forms/UIR_Training.pdf (accessed September 12, 2017).

has officially concluded. Hilliard SD further implies that if no physical evidence of an alleged offender is found at a crime scene, then no crime can have occurred. (Complaint, ¶ 38, Reply, p. 8.).

{¶26} Columbus PD testifies that the email from Kimberly Sharrock referred only to the work being done by the latent print unit. (Pelphrey Aff., ¶ 17-20.) There is no evidence that Sharrock had either the authority or intent to declare that the entire criminal investigation was finished. Sergeant Pelphrey, the supervising detective sergeant, affirms to the contrary that "[t]his case is not closed." (*Id.*, ¶ 16.) Pelphrey states that the case is proceeding as the investigation of a crime (*Id.*, ¶ 9-13), and explains that while the case is currently inactive due to exhaustion of available leads, it could become active at any time that additional information becomes known. (*Id.*, ¶ 14-15.) The lack of an identified suspect in this case does not remove the investigatory records from the status of being compiled in anticipation of probable criminal proceeding. *Leonard v. White,* 75 Ohio St.3d at 518.

{¶27} I conclude that the Columbus PD has met its burden of proof in showing that the withheld records pertain to a law enforcement matter of a criminal nature, and that the law enforcement investigatory work product exception continues to apply.

### Constitutional Right of Privacy

{¶28} Finally, respondent argues that release of portions of the withheld records is prohibited by the victim's constitutional right of privacy, which if proven would make them "records the release of which is prohibited by state or federal law." R.C. 149.43(A)(1)(v). However, because all of the withheld records are subject to the confidential law enforcement investigatory work product exception, the court need not address this issue. "Courts decide constitutional issues only when absolutely necessary." (Citations omitted.) *State ex rel. Beacon Journal Publ'g Co. v. Akron*, 104 Ohio St.3d 399, 2004-Ohio-6557, 81 N.E.2d 1087, ¶ 48.

**Conclusion**

{¶29} Upon consideration of the pleadings and attachments, I find that Hilliard SD has failed to establish by clear and convincing evidence that Columbus PD violated division (B) of R.C. 149.43 by withholding records that were and remain confidential law enforcement investigatory records. R.C. 149.43(A)(2). I recommend that respondent's motion to dismiss for failure to state a claim pursuant to Civ.R. 12(B)(6) be GRANTED.

{¶30} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

 

 

JEFFERY W. CLARK
Special Master

cc:

Richard Goldberg
William Robert Creedon
250 East Broad Street
9th Floor
Columbus, Ohio 43215

Michael R. Halloran
77 North Front Street
Columbus, Ohio 43215

**Filed September 12, 2017**
**Sent to S.C. Reporter 10/4/17**