[Cite as *Ohio Crime Victim Justice Ctr. v. Cleveland Police Div.*, 2017-Ohio-8950.]

| | |
|---|---|
| OHIO CRIME VICTIM<br>JUSTICE CENTER<br><br>    Requester<br><br>    v.<br><br>CITY OF CLEVELAND<br>POLICE DIVISION<br><br>    Respondent | Case No. 2016-00872-PQ<br><br>Special Master Jeffery W. Clark<br><br>REPORT AND RECOMMENDATION |

{¶1} On November 18, 2016, requester Ohio Crime Victim Justice Center ("OCVJC") filed a complaint under R.C. 2743.75 alleging denial of timely access to public records in violation of R.C. 149.43(B) by respondent City of Cleveland, Police Division ("Cleveland PD"). The complaint alleged that:

> Ohio Crime Victim Justice Center (OCVJC) has made requests concerning Kaley J. Furner, Dion Davis, and Tommie Lee Davis Jr. via fax. The requests concerning Ms. Furner, Mr. Davis, and Mr. Davis Jr. have been submitted five times with numerous phone calls in-between the requests. (See attached pages for summary of attempts and copies of each attempt.) Cleveland Division of Police has acknowledge [sic] the submission over the phone and the faxes went through without error. However, Cleveland Division of Police has refused to provide any response in writing or provide the requested records.

OCVJC attached a copy of the original public records request concerning Kaley J. Furner, but did not attach copies of any request concerning Dion Davis or Tommie Lee Davis, Jr. The case proceeded to mediation, and on April 7, 2017, the court was notified that the case was not fully resolved. On April 21, 2017, Cleveland PD filed its response pursuant to R.C. 2743.75(E)(2). On May 9, 2017, OCVJC filed a statement that post-complaint records provided by Cleveland PD concerning the Kaylee Furner request were a satisfactory response. (Statement, p. 1.) On May 17, 2017,

OCVJC complied with a court order to file the original public records request concerning Davis and Davis, Jr. The Davis request, dated August 23, 2016, asked for:

> All incident reports and related files, including, but not limited to, interviews, whether audio or video, and narratives involving the following individuals: Tommie Lee Davis Jr.; Approximate Year of Birth: 1997 and Dion Davis; Date of Birth: 11/12/1983.

(Original public records request, p. 3.) On June 30, 2017, respondent filed an additional memorandum of law ("Memorandum") regarding the records withheld, and on July 7, 2017, it filed all records responsive to the Davis requests under seal ("Responsive records"). On July 10, 2017, OCVJC filed its reply to Cleveland PD's pleadings ("Response to memorandum"). On September 27, 2017, respondent filed notice that it had provided OCVJC with additional responsive documents, and filed an explanation under seal of all redactions. (Affidavit of Aviss Rollins.) OCVJC disputes the validity of Cleveland PD's application of the following exceptions to the withheld or redacted records: constitutional right of privacy, R.C. 5153.17, R.C. 5139.05(D), and R.C. 149.43(A)(1)(l). (Response to memorandum, p. 2-4.)

{¶2} The remedy of production of records is available under R.C. 2743.75 if the court of claims determines that the public office denied the aggrieved person access to requested public records in violation of R.C. 149.43(B). R.C. 149.43(B)(1) requires a public office to make copies of public records available to any person upon request, within a reasonable period of time. The policy underlying the Public Records Act is that "open government serves the public interest and our democratic system." *State ex rel. Dann v. Taft*, 109 Ohio St.3d 364, 2006-Ohio-1825, 848 N.E.2d 472, ¶ 20. "[O]ne of the salutary purposes of the Public Records Law is to ensure accountability of government to those being governed." *State ex rel. Strothers v. Wertheim*, 80 Ohio St.3d 155, 158, 684 N.E.2d 1239 (1997). Therefore, R.C. 149.43 must be construed "liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records." *State*

*ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374, 376, 662 N.E.2d 334 (1996).

{¶3} R.C. 2743.75(F)(1) states that public records claims filed thereunder are to be determined through "the ordinary application of statutory law and case law." Case law regarding the alternative statutory remedy of a mandamus action[1] provides that a relator must establish by "clear and convincing evidence" that they are entitled to relief. *State ex rel. Miller v. Ohio State Hwy. Patrol,* 136 Ohio St.3d 350, 2013-Ohio-3720, ¶ 14. Therefore, the merits of this claim shall be determined under the standard of clear and convincing evidence, i.e., "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. *See Hurt v. Liberty Twp.*, 5th Dist. Delaware No. 17CAI050031, 2017-Ohio-7820, ¶ 27-30.

**Motion to Dismiss**

{¶4} Cleveland PD moves to dismiss the complaint on the grounds that, 1) OCVJC failed to attach copies of the Davis and Davis, Jr., request to its complaint, rendering the complaint deficient under R.C. 2743.75(D)(1), and, 2) Cleveland PD responded within a reasonable time with all responsive records not subject to withholding. (Response, p. 2-5; Memorandum, p. 2-3.) In construing a motion to dismiss pursuant to Civ.R. 12(B)(6), the court must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). Then, before the court may dismiss the complaint, it must appear beyond doubt that plaintiff can prove no set of facts entitling him to recovery. *O'Brien v. Univ. Community*

---

[1] Formerly R.C. 149.43(C)(1), recodified in 2016 as R.C. 149.43(C)(1)(b), 2016 Sub.S.B. No. 321.

*Tenants Union, Inc.*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975).  The unsupported conclusions of a complaint are, however, not admitted and are insufficient to withstand a motion to dismiss. *Mitchell* at 193.

**Failure to Attach Davis Request to Complaint**

{¶5} Cleveland PD asserts that OCVJC's complaint is deficient for failure to comply with R.C. 2743.75(D)(1), which states that a requester "shall attach to the complaint copies of the original records request and any written response or other communications relating to the request from the public office." Cleveland PD presumably argues that either OCVJC fails to invoke the jurisdiction of the court, or fails to state a claim upon which relief may be granted. Civ.R. 12(B)(1), (6).

{¶6} To the extent that they would by their nature be clearly inapplicable, the Rules of Civil Procedure do not apply to procedure in special statutory proceedings. Civ.R. 1(C)(6).  R.C. 2743.75 is a special statutory proceeding providing, at division (E)(2), that other than the complaint and response, "[n]o further motions or pleadings shall be accepted by the clerk of the court of claims or by the special master * * * unless the special master directs in writing that a further motion or pleading be filed."  The special master directed in writing that OCVJC's original Davis request be filed.  (Order, May 11, 2017.)  Further, Cleveland PD affirms that it received the original Davis request on September 8, 2016 (Response, p. 1-2.).  OCVJC filed a copy of the original Davis request with the court on May 17, 2017.  Respondent addressed the major exceptions to release of the Davis records in its initial response, and supplemented its arguments in its memorandum of June 30, 2017, and with the Rollins Affidavit of September 27, 2017. OCVJC's initial failure to submit the Davis request has been rectified, and respondent does not allege any prejudice as a result.  I therefore recommended that the motion to dismiss the claim for production of the Davis records on this basis be OVERRULED.

**Suggestion of Mootness**

{¶7} In an action to enforce R.C. 149.43(B), a public office may produce the requested records prior to the court's decision, and thereby render the claim for production of records moot. *State ex rel. Striker v. Smith*, 129 Ohio St.3d 168, 2011-Ohio-2878, ¶ 18-22. A court considering a claim of mootness must first determine what records were requested, and then whether all responsive records were provided. OCVJC requested certain records pertaining to Kaylee Furner, and states that Cleveland PD provided these records subsequent to the filing of the complaint. (Statement, p. 1.) I therefore recommend that the claim for production of records pertaining to Kaylee Furner be DISMISSED as moot.

{¶8} With regard to records concerning Dion Davis and Tommie Lee Davis, Jr., Cleveland PD has provided OCVJC with a number of records, but redacted or withheld some. OCVJC disputes that the responsive records were properly redacted or withheld. I therefore recommend that the claim for the Davis and Davis, Jr., records be DISMISSED as moot as to the records provided without redaction. The court should PROCEED to determine on the merits whether the remaining records and portions of records were withheld in violation of R.C. 149.43(B).

**Records Excluded by OCVJC**

> On May 9, 2017, OCVJC effectively amended its claim by stating that it is not seeking any Child and Family Services records. If Cleveland Police Department is in possession of Child and Family Services records, those should not be included in the response to the request.

(Statement, p. 5.) Cleveland PD has identified Child and Family Services ("CFS") records within the responsive documents submitted under seal as: pp. 111, 121-161, 169, and 174-215. In addition, records at pp. 105-106 and 110 are duplicates of CFS records. Upon independent review, I conclude that the listed documents are self-authenticating records of CFS. These records should therefore be excluded from any order of the court to produce records concerning Davis or Davis, Jr.

**The Public Records Act Applies to "Records"**

{¶9} Respondent asserts that some of the responsive records "are not City of Cleveland documents." (Rollins Aff., re: Bates-numbered documents pp. 115-161, 169, 174-221, 224-229, 231-232, and 246.) The court construes this as an assertion that the listed documents are not "records" of the Cleveland PD and therefore not subject to production by the office in response to a public records request. However, a document may serve as a record for more than one public office. *State v. Sanchez*, 79 Ohio App.3d 133, 136, 606 N.E.2d 1058 (6th Dist.1992). Regardless of whether they also function as records elsewhere, the only question in this action is whether the items serve as records of Cleveland PD.

{¶10} R.C. 149.011(G) provides a three-part definition of "records" as used in Revised Code Chapter 149:

> The term "records" includes "any document, device, or item, regardless of physical form or characteristic, including an electronic record as defined in section 1306.01 of the Revised Code, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office.

As information recorded on fixed media of either paper or electronic files, all the listed items meet the first element of the definition of a record, as *documents*. Regarding the second element, the listed documents were all *received* by the Cleveland PD from the CFS (Responsive records, transmission cover letters at pp. 121, 159, 174 and 212) or through the Ohio Law Enforcement Gateway ("OHLEG"). The third part of the definition, that records are items that "serve to document" the activities of the office, is broad and inclusive:

> We previously have held that the General Assembly's use of "includes" in *R.C. 149.011(G)* as a preface to the definition of "records" is an indication of expansion rather than constriction, restriction, or limitation and that the statute's use of the phrase "any document" is one encompassing all documents that fit within the statute's definition, regardless of "form or

characteristic." * * * There can be no dispute that there is great breadth in the definition of "records" for the purposes here. Unless otherwise exempted or excepted, almost all documents memorializing the activities of a public office can satisfy the definition of "record." * * * Indeed, any record that a government actor uses to document the organization, policies, functions, decisions, procedures, operations, or other activities of a public office can be classified reasonably as a record.

*Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 20. The listed records were gathered and compiled within the requested case files, in aid of Cleveland PD's investigation of criminal offenses. Thus, the records obtained from the CFS, BMV, and OHLEG document Cleveland PD's official "functions, * * * procedures, operations, and other activities."

{¶11} I conclude that the listed documents all meet the definition of "records" of Cleveland PD, and none may be withheld on the basis that they "are not City of Cleveland documents."

**The Assembled CFS Documents are "Kept By" Cleveland PD**

{¶12} "'Public record' means records *kept by* any public office." R.C. 149.43(A)(1). "Kept by" means records maintained by the public office as provided by law or under the rules adopted by the relevant records commission (i.e., approved records retention schedules). Once created, received, or coming under the jurisdiction of a public office,

All records are the property of the public office concerned and shall not be removed, destroyed, mutilated, transferred, or otherwise damaged or disposed of, in whole or in part, except as provided by law or under the rules adopted by the records commissions provided for under sections 149.38 to 149.42 of the Revised Code * * *. Those records shall be delivered by outgoing officials and employees to their successors and shall not be otherwise removed, destroyed, mutilated, or transferred unlawfully.

R.C. 149.351(A); *see also* R.C. 149.40, *Making only necessary records*. Remedies for unlawful removal or transfer of a public office's records include civil actions for injunctive

relief and forfeiture, and replevin by the attorney general if requested by the department of administrative services.  R.C. 149.351(B); R.C. 149.352; and R.C. Chapter 2737.[2] Cleveland PD has maintained, and does not allege disposal of, the listed CFS and other outside agency documents.  I conclude that these records initially meet the definition of "public records" of Cleveland PD.

**Application of Claimed Exceptions**

**{¶13}** R.C. 149.43(A)(1) enumerates specific exceptions from the definition of "public record," as well as a catch-all exception for, "[r]ecords the release of which is prohibited by state or federal law."  R.C. 149.43(A)(1)(v).  The public office bears the burden of proof to establish the applicability of any exception:

> Exceptions to disclosure under the Public Records Act, R.C. 149.43, are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception. * * * A custodian does not meet this burden if it has not proven that the requested records fall squarely within the exception.

*State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, ¶ 10; *accord State ex rel. Thomas v. Ohio State Univ.*, 71 Ohio St.3d 245, 247, 643 N.E.2d 126 (1994).

**{¶14}** Where a public office claims an exception based on risks that are not evident within the records themselves, the office must provide more than conclusory statements in affidavits to support that claim.  *State ex rel. Besser v. Ohio State Univ.*, 89 Ohio St.3d 396, 400-404, 732 N.E.2d 373 (2000).  Cleveland PD asserts that specified portions of the withheld records are subject to the constitutional right of privacy of a crime victim and exceptions for children services records provided in R.C. 5153.17, R.C. 5139.05(D), and R.C. 149.43(A)(1)(l).  (Answer, p. 5-7; Memorandum, p. 3-7.) Cleveland PD also asserts R.C. 2151.421(H), R.C. 149.43(A)(1)(h) and (A)(2), R.C. 4501.27(C), R.C. 149.43(A)(1)(a), the federal Health Insurance and Accountability

---

[2] These enforcement actions are not within the jurisdiction of this court.

Act of 1996 ("HIPAA"), common law attorney-client work product, and the constitutional right of privacy of persons in their social security number (Affidavit of Aviss Rollins, filed under seal.). Respondent asserts that all withheld and redacted records are subject to one or more of these exceptions.[3]

**Constitutional Right of Privacy**

{¶15} Cleveland PD asserts that disclosure of portions of withheld documents relating the intimate details of a sexual assault/rape would violate the victims' constitutional right of privacy under the Fourteenth Amendment. Records protected by this right are "[r]ecords the release of which is prohibited by state or federal law," and are therefore excepted from the definition of "public record" by R.C. 149.43(A)(1)(v). *State ex rel. Enquirer v. Craig*, 132 Ohio St.3d 68, 2012-Ohio-1999, 969 N.E.2d 243, ¶ 13.

{¶16} OCVJC argues that the constitutional right to privacy is not implicated here, because OCVJC seeks these records "to advocate on behalf of the victim who wants the information." (Requester's response, p. 4.) OCVJC then urges in the alternative that, "[i]f this Court finds *Bloch v. Ribar* is applicable, the Court should instruct the City to redact the victim information and other identifying information." (*Id.* at 5.) OCVJC cites no case law to support either proposition, and has not filed a waiver executed by or on behalf of any victim. The victim's constitutional right to privacy is not OCVJC's to waive, and therefore records of Cleveland PD falling under the victim's privacy right may not be disclosed. *State ex rel. Wallace v. State Med. Bd.*, 89 Ohio St.3d 431, 434-436, 732 N.E.2d 960 (2000). Requester asserts that the potential for wider disclosure of the intimate details is limited because, "[u]nlike the press conference in *Bloch,* the information would only be disclosed to one organization, not the entire public."

---

[3] Although Cleveland PD did not cite all these exceptions in its responses to OCVJC's requests, it is permitted to raise them in defense of this litigation. "The explanation [provided when denying a request] shall not preclude the public office * * * from relying upon additional reasons or legal authority in defending an action commenced under division (C) of this section." R.C. 149.43(B)(3).

(Statement, p. 2.)   However, any response made to a public records request is itself a public record subject to release to any subsequent requester.   Nor may the court "instruct the City to redact the victim information and other identifying information" on the authority of *Bloch*, as victim identification is not included in the right to privacy found in *Bloch*.  The court must apply the law of privacy as it exists to the records requested.

{¶17} The U.S. Supreme Court recognizes a constitutional right to informational privacy under the Fourteenth Amendment Due Process Clause.   This right protects people's "interest in avoiding divulgence of highly personal information," but must be balanced against public interest in the information.   Qualifying information cannot be disclosed unless disclosure "narrowly serves a compelling state interest."   *Kallstrom v. Columbus*, 136 F.3d 1055, 1061 (6th Cir. 1998), citing *Whalen v. Roe*, 429 U.S. 589, 598-600 (1977), and *Nixon v. Admr. of Gen. Servs.*, 433 U.S. 425 (1977).   To serve as an exception to the Ohio Public Records Act, a right to privacy must rise to a *fundamental* constitutional level.   *State ex rel. WBNS TV v. Dues*, 101 Ohio St.3d 406, 2004-Ohio-1497, ¶¶ 30-31, 36-37.   The federal Sixth Circuit has held that "a rape victim has a fundamental right of privacy in preventing government officials from gratuitously and unnecessarily releasing the intimate details of the rape where no penological purpose is being served."   *Bloch v. Ribar*, 156 F.3d 673, 686 (6th Cir.1998).   The *Bloch* court did not find that the "intimate details" of a rape includes the victim's name or identifying information – indeed the victim in *Bloch* was a named plaintiff.   Nor has any other Ohio case found a fundamental constitutional interest in the privacy of rape victims' names.   *But see State ex rel. McCleary v. Roberts*, 88 Ohio St.3d 365, 368-372, 725 N.E.2d 1144 (2000) (disclosure of database containing children's names, addresses, parents/guardians, and medical information implicated a fundamental constitutional right to be free from a heightened risk that information might be used to physically, sexually, or otherwise abuse the children in the future.).

{¶18} Where state action infringes upon a fundamental right, such action will be upheld under the substantive due process component of the Fourteenth Amendment only where the governmental action furthers a compelling state interest, and is narrowly drawn to further that state interest. *Kallstrom* at 1064; *Craig* at ¶ 14.  However, the courts assume that the interests served by allowing public access to public records rise to the level of a compelling state interest, *Kallstrom* at 1065; *State ex rel. Cincinnati Enquirer v. Streicher*, 1st Dist. Hamilton No. C-100820, 2011-Ohio-4498, ¶ 31. In balancing these rights and interests, the test is whether the public office has fulfilled the compelling state interest in providing access to its public records, while narrowly drawing the boundaries of that interest to protect the victim's fundamental constitutional right to privacy.

{¶19} Applying Cleveland PD's application of the privacy exception to the responsive records (Rollins Aff., ¶ 4.), I find that in each instance the right of the victims to privacy in the intimate details of alleged sexual assault overbalances the stated interest in releasing those details to a public records request.  The asserted redactions are narrowly drawn to protect the privacy interest.   I conclude that the following (identified by Bates-numbered page and, as necessary, paragraph, lines, and words) may be redacted:

Page 21:  lines 15-17.

Page 31: paragraph 3, last 5 words; paragraph 5, first sentence, last 4 words; paragraph 9, first sentence, last 4 words.

Page 91:  lines 4-5, and 10.

Page 98:  lines 7 and 15; line 16, first word.

Page 100:  paragraph 2.

Page 101:  Conclusion section; Interview #1, second sentence.

Page 105:  Anatomical diagram, and handwritten notes.

Page 106:  Anatomical diagram, and handwritten notes.

Page 110:  Anatomical diagram, and handwritten notes.

Page 170:  lines 7 and 15; line 16, first word.

Page 172:  paragraph 2.

Page 173:  Conclusion section; Interview #1, second sentence.

**Exceptions Applicable to Children Services Agencies ("CSA's")**

{¶20} Respondent states that portions of the withheld documents are records of a "joint investigation of police and the youth services agency," and therefore excepted from release by former R.C. 2151.421(H),[4] R.C. 5153.17, and R.C. 5139.05(D). (Memorandum, p. 5-7; Rollins Aff., ¶ 4.)  Respondent's reliance on these statutes to shield disclosure of a "joint investigation" is misplaced, as the exceptions expressly apply only to initial reports made to children services agencies ("CSA's") or to a police officer, and to certain reports made by the CSA.  The exceptions in these statutes do not apply to records of criminal investigation conducted by law enforcement.  *See generally State ex rel. Beacon Journal Publg. Co. v. Akron*, 104 Ohio St.3d 399, 2004-Ohio-6557, 819 N.E.2d 1087, ¶ 36-45.

{¶21} R.C. 2151.421(A) and (B) govern reporting of suspected child abuse or neglect to a public CSA or to a peace officer.  Any CSA that receives such a report is required to make an investigation in cooperation with law enforcement, and submit the report of its investigation, in writing, to the law enforcement agency. Former R.C. 2151.421(F)(1).[5] Then, the CSA makes any recommendations to the county prosecuting attorney or city director of law that it considers necessary to protect children brought to its attention. Former R.C. 2151.421(F)(2).  The statute makes no reference to "joint investigations," and the sole responsibility is on the CSA to make the reports and recommendations required.

---

[4] Renumbered 2151.421(I), as amended by 2016 HB 493, eff. March 14, 2017.
[5] Renumbered 2151.421(G), as amended by 2016 HB 493, eff. March 14, 2017.

{¶22} Former R.C. 2151.421(H)(1) provides that "a report made under this section is confidential," and thus not a public record under R.C. 149.43(B). *See State ex rel. Renfro v. Cuyahoga Cty. Dept. of Human Servs.*, 54 Ohio St.3d 25, 27, 560 N.E.2d 23 (1990). However, "a report made under this section" means only reports prepared by the CSA, and does not apply to the reports of criminal investigation of the same matter prepared by a law enforcement agency. *Beacon Journal* at ¶ 35-39. Law enforcement criminal investigation reports are not made confidential by the fact that CFS investigations are made "in cooperation with" the law enforcement agency:

> Although R.C. 2151.421(F)(1) specifies that a public children services agency's investigation of reported child abuse or neglect "shall be made in cooperation with the law enforcement agency and in accordance with the memorandum of understanding prepared under [R.C. 2151.421(J)]," it ultimately places the sole responsibility on the public children services agency to make the report and recommendations for purposes of the statute. R.C. 2151.421(F)(1) and (2).

*Id.* at ¶ 40. Thus, former R.C. 2151.421(H)(1) does not exempt any child abuse investigation reports or portions of reports prepared by Cleveland PD, because they are not reports specified in that statute. *Id.* at ¶ 45.

{¶23} Applying former R.C. 2151.421(H)(1) and *Beacon Journal* to the portions of the responsive records asserted as "joint investigation" (Rollins Aff., ¶ 4), I find that the withheld text reflects only communication between a Cleveland PD criminal investigator and an employee of the CSA. None of the instances involve excerpts from, or references to any protected report of the CSA.[6] The exception clearly does not apply to fax cover sheets, telephone notes, or other communications that do not involve disclosure of the contents of a specific protected CSA report. I conclude that none of

---

[6] The records claimed exempt as joint investigation are portions of responsive records pp. 7, 15, 32, 89, 100, and 114. (Rollins Aff., ¶ 3.) For comparison *in camera*, responsive records pp. 122-158 and 175-211 appear to be a completed Assessment/Investigation report of October 28, 2011 for Children and Family Services, Case ID 2137686.

the redactions identified as notes of "joint investigation" are excepted under former R.C. 2151.421(H)(1) or (2). (See page and line references in Rollins Aff., ¶ 3-4.)

{¶24} However, former R.C. 2151.421(H)(2) separately prohibits "the unauthorized dissemination of the *contents* of any report made under this section." (Emphasis added.) As with former R.C. 2151.421(H)(1), confidentiality under (H)(2) is limited to (contents of) a "report made under this section." Thus, insofar as its reports refer to the initial reports specified in R.C. 2151.421(A) and (B), Cleveland PD would generally be entitled to delete those references. *Beacon Journal, Id.* Cleveland PD properly asserts numerous instances of information in its records that originated as the contents of reports made under R.C. 2151.421. Identifying information that Cleveland PD itself received directly from reporting persons pursuant to R.C. 2151.421(B) is content of a "report made pursuant to this section" and is confidential (e.g., responsive records,            pp. 7, 21, 31-32, et al.). Cleveland PD may thus redact reporting person and victim information obtained through its own initial reports, as well as content information obtained from the report received from CFS. The Eighth District has applied *Beacon Journal* to a request for Cleveland PD records containing information from CFS reports, and found that:

> After conducting the in camera inspection, the court concludes that the redactions are proper. Most of the redactions made were identifying information of the molested children, their names, addresses, telephone numbers, birth dates, ages, address of the incidents, their parents' and siblings' names, and words identifying their relationships to other people mentioned in the record, such as mother, father, son, daughter, sister and brother. * * *.
> R.C. 2151.421(H) also exempts from disclosure any report made under that section, as well as any information that identifies the person who made the report. Thus, Department of Children and Family Service reports of child abuse and neglect and their authors are exempt from disclosure. In *Beacon Journal,* the Supreme Court clarified the scope of the exemption: to the extent that the police reports concerning incidents of

child abuse refer to the reports made under R.C. 2151.421, the police may redact those portions of their reports.

*State ex rel. White v. Watson*, 8th Dist. No. 86737, 2006-Ohio-5234, ¶ 5-6; *accord State ex rel. Munici v. Kovacic*, 8th Dist. No. 64818, 1994 Ohio App. LEXIS 2612, *22-29 (June 15, 1994).

{¶25} The exception in former R.C. 2151.421(H)(2) thus can be applied to names and contact information of reporting persons; juvenile victim names, addresses, telephone numbers, birth dates, and ages; address of the incident; parents' and siblings' names; and words identifying their relationships to other people mentioned in the record. Applying R.C. 2151.421, *Beacon Journal*, and *White* to the portions of the responsive records asserted to be names and contact information of reporting persons and as the juvenile victim information listed in *White* (Rollins Aff., ¶ 4), I find that Cleveland PD's redaction of that specific information is justified, with the exception of redactions on pages 15, 101, and 236, where I find that the names of hospitals, doctors, and nurses are not "identifying information" of the juvenile victim and may not be redacted pursuant to former R.C. 2151.421(H)(2).

{¶26} Cleveland PD next asserts that certain documents are juvenile court/youth services records that are confidential pursuant to R.C. 5153.17. (Memorandum, p. 5-7; Rollins Aff., ¶ 4.) R.C. 5153.17 provides that,

> The public children services agency shall prepare and keep written records of investigations of families, children, and foster homes, and of the care, training, and treatment afforded children, and shall prepare and keep such other records as are required by the department of job and family services. Such records shall be confidential, * * *.

The Eighth District has found that the logic of *Munici, supra*, regarding former R.C. 2151.421(H)(1) is applicable to the similarly worded exception found in R.C. 5153.17. *State ex rel. Sawyer v. Cuyahoga Cty. Children Servs.*, 8th Dist. Cuyahoga No. 86436, 2006-Ohio-395, ¶ 5-6. Thus, the language of R.C. 5153.17

expressly protects only records prepared and kept by a public CSA, and not the criminal investigation records of a law enforcement agency.

{¶27} Applying R.C. 5153.17 and *Sawyer* to pp. 105-106, 110-111, 121-161, 169, and 174-215 of the responsive records (Rollins Aff., ¶ 4), I find that the listed pages are records of the public CSA covered by the statute, with the exception of four pages. The exceptions are the fax cover sheets documenting the transmission of these records to the Cleveland PD, which reflect only communication between a Cleveland PD criminal investigator and an employee of the CSA, and are not "records of investigation" prepared and kept by the CSA. I conclude that all the pages identified by Cleveland PD as CSA investigation records are properly withheld under R.C. 5153.17, except for pp. 121, 159, 174 and 212. (See page and line references in Rollins Aff., ¶ 3-4.) I further note that, other than these four pages, the records covered by R.C. 5153.17 are CFS records that OCVJC has now excluded from its request. (Statement, p. 5.)

{¶28} Finally, respondent alleges that the same listed records are protected by the exception contained in R.C. 5139.05(D), which provides that,

> (D) Records maintained by the department of youth services pertaining to the children in its custody shall be accessible only to department employees, except by consent of the department, upon the order of the judge of a court of record, or as provided in divisions (D)(1) and (2) of this section. These records shall not be considered "public records," as defined in section 149.43 of the Revised Code. * * *.

Respondent does not allege that any of the responsive records were records "pertaining to the children in [the department of youth services] *custody*." However, as both R.C. 5153.17 and requester's exclusion of CFS records separately justify the withholding of the same records, I find it unnecessary to determine whether any of these records could be covered by R.C. 5139.05(D).

**Other Exceptions**

{¶29} In the interest of expedience, the court ordered respondent to provide any exceptions claimed for portions of the records allegedly covered by the privacy and public CSA exceptions.  (Order, May 22, 2017.)  Cleveland PD claims the following exceptions for certain responsive records, including portions of records found above not to be covered by a "joint investigation" exception:

**Medical Records and HIPAA**

{¶30} Respondent asserts that portions of responsive records on pages 15, 101, 224-229, 231-232, 236, and 246, are exempt as "medical records" and/or under the Health Insurance Portability and Accessibility Act ("HIPAA").  The text in pages 15, 101, and 236 consists of notes within police investigation reports.

{¶31} R.C. 149.43(A)(1) provides that "'[p]ublic record' does not mean * * *:  (a) Medical records."  The Act defines medical records as follows:

> "Medical record" means any document or combination of documents, except births, deaths, and the fact of admission to or discharge from a hospital, that pertains to the medical history, diagnosis, prognosis, or medical condition of a patient and that is generated and maintained in the process of medical treatment.

R.C. 149.43(A)(3).  The definition has three conjunctive requirements:

1. The document must pertain to the medical history, diagnosis, prognosis, or medical condition of a patient, and,

2. The document must have been generated in the process of medical treatment, and,

3. The document must be maintained in the process of medical treatment.

A document that pertains to diagnosis and treatment, but is used by an investigative agency that does not maintain the document in the process of medical treatment, does not meet the definition.

> In order to fit within the "medical record" exception to the public records law, 'a record must pertain to a medical diagnosis *and* be generated and maintained in the process of medical treatment.' (Emphasis *sic*.)  *State,*

*ex rel. Toledo Blade Co. v. Telb* (C.P. 1990), 50 Ohio Misc.2d 1, 10, 552 N.E.2d 243, 251. In *Telb,* the court held that to be excepted from disclosure, the records sought must meet the conjunctive requirements of the statute. In the instant matter, records held by the Ombudsman Office may involve diagnosis and treatment, but they are not "maintained in the process of medical treatment" and therefore are not exempt from disclosure.

*State ex rel. Strothers v. Wertheim*, 80 Ohio St.3d 155, 158, 684 N.E.2d 1239 (1997).

**{¶32}** Although some of the withheld text arguably "pertains to the medical history, diagnosis, prognosis, or medical condition of a patient," the text in page 101 only notes where a subpoena should be sent, and the text in pages 224-229, 231-232, 236 (lines 10-11, 16-18), and 246 documents only forensic investigative procedures. None of the alleged medical records are on medical provider forms or letterhead. The portions of police reports that respondent claims as medical records were all generated in the process of the criminal investigations that the reports document. All were drafted by Cleveland PD investigators. All have been maintained by Cleveland PD in the process of criminal investigation. Respondent does not point to any evidence that the specified text was generated or maintained in the course of medical treatment, and none is apparent on examination *in camera*. Respondent has not met its burden to show that these records were generated and maintained "in the process of medical treatment." *Strothers.* I conclude that none of the records identified by respondent qualify for withholding under the "medical records" exception. *See Hilliard City Sch. Dist. v. Columbus Div. of Police*, Ct. of Cl. No. 2017-00450-PQ, 2017-Ohio-8052, ¶ 8-10.

**{¶33}** Respondent claims that the same records must be withheld under the terms of the Health Information Portability and Accountability Act ("HIPAA"). *See* Section 164.502(a), Title 45, C.F.R. However, the Cleveland PD does not operate as a "covered entity" (health plan, health care clearinghouse, or health care provider) to which HIPAA applies. 42 USCS § 1320d; Section 160, 103, Title 45, C.F.R. Further,

even if any of the records were otherwise covered by HIPAA, OCVJC's requests fall under an exception to the HIPAA prohibition of disclosure, because Ohio public records "disclosure is required by law." Section 164.512(a)(1), Title 45, C.F.R.; *State ex rel. Cincinnati Enquirer v. Daniels*, 108 Ohio St.3d 518, 2006-Ohio-1215, 844 N.E.2d 1181, ¶¶ 11-28, 34.  I conclude that none of the responsive records are subject to withholding under HIPAA.

**Records Identifying Uncharged Suspects**

{¶34} Respondent lists numerous instances of names, addresses, relationships, and other identifying information redacted on the basis of the "uncharged suspect" section of the confidential law enforcement exception in R.C. 149.43(A)(1)(h), (A)(2)(a):

> (2) "Confidential law enforcement investigatory record" means any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following:
>
> (a) The identity of a suspect who has not been charged with the offense to which the record pertains, * * *.

Requester does not dispute that the records contain names of persons actually suspected of the criminal offenses under investigation, or that those persons have not been charged with any offense to which the records pertain.

{¶35} With regard to what specific information may be withheld as "creating a high probability of disclosure of * * * [t]he identity of a suspect who has not been charged," this case is analogous to *State ex rel. Rocker v. Guernsey Cty. Sheriff's Office*, 126 Ohio St.3d 224, 2010-Ohio-3288, 932 N.E.2d 327, where Rocker was the putative victim of the person whose investigative file she requested.  The Guernsey County Sheriff's Office released the initiating incident report, but withheld the entire subsequent criminal investigation file as "inextricably intertwined" with the identity of the suspect.  The Court disallowed the sheriff's overbroad withholding, and found:

> For most of these records, if the sheriff's office redacts the priest's name, the name, location, and diocese of the church he worked at, and other

specific identifying information, the disclosure of the records will not create a high probability of disclosure of the priest's identity. For example, after the priest's name and specific identifying information are redacted, the call record does not disclose the priest's identity. Notably, in *Master*, 76 Ohio St.3d at 342, 667 N.E.2d 974, *Ohio Patrolmen's Benevolent Assn.*, 89 Ohio St.3d at 448, 732 N.E.2d 969, and *Musial*, 106 Ohio St.3d 459, 2005-Ohio-5521, 835 N.E.2d 1243, at ¶ 29, we did not hold that the claimed uncharged-suspect exemption applied to *all* the requested records.

*Id.* at ¶ 14. The Court concluded that an order should issue for the sheriff's office to redact only the offender's name, address, name and location of his workplace, and "other specific, identifying information." *Id.* at ¶ 16. In addition to the items approved in *Rocker*, respondent here redacted the uncharged suspects' contact information and terms of familial relationship to the victim. I find that these redactions constitute specific, identifying information of the uncharged suspects. Although other exceptions may apply to the same identifying information, I note that Cleveland PD may not use the uncharged suspect exception to redact any information from its initial incident or offense reports. *State ex rel. Beacon Journal Publg. Co. v. Maurer*, 91 Ohio St.3d 54, 741 N.E.2d 511 (2001).

{¶36} Requester has not had the benefit of respondent's explanation, including legal authority, for some redactions, and has thus had no opportunity to challenge the application of its additional, mostly applicable exceptions. For the sake of expedience, I note that respondent has withheld pages 115-120 and 216-221 as records obtained through OHLEG, R.C. 109.57(A), (D)(1)(a) - (b); R.C. 2913.04(D), and as Ohio Bureau of Motor Vehicles printouts. R.C. 4501.27(B)(2)(a), (C). I find that withholding these records is appropriate.

{¶37} A law enforcement agency may withhold records from a criminal investigation file that are "specific confidential investigatory techniques." R.C. 149.43(A)(1)(h) and (2)(c). Only the *results* of forensic or laboratory reports fall under the exception for specific confidential laboratory techniques, and not the submission

records. *State ex rel. Lawhorn v. White*, 8th Dist. Cuyahoga No. 63290, 1994 Ohio App. LEXIS 892, *7-8 (March 7, 1994); *accord State ex rel. Williams v. Cleveland*, 8th Dist. Cuyahoga No. 61762, 1992 Ohio App. LEXIS 6614, *6-10 (December 24, 1992); *State ex rel. National Broadcasting Co. v. Cleveland*, 82 Ohio App.3d 202, 209, 611 N.E.2d 838, (8th Dist.1992).  On review of the records submitted under seal, I find that pp. 224-225 and 227-228 contain results of forensic DNA testing.  From these pages, respondent may redact the information immediately following "DNA STR (Short Tandem Repeat) analysis" on both p. 224 to the end of p. 225, and p. 227 to the end of p. 228. Other exceptions (e.g. victim and suspect identification, intimate details, et al.) may be applied to both the portions of pp. 224 and 227 not exempted under R.C. 149.43(A)(2)(c), as well as the records at pp. 231-232 and 246 that document evidence submission.

{¶38} However, I find Cleveland PD fails to show that page 233 is "attorney-client privileged communication/attorney work product." The document is the police department copy of a Felony-Review Form that does not reflect delivery of legal advice from legal counsel acting as such, *State ex rel. Leslie v. Ohio Housing Fin. Agency,* 105 Ohio St.3d 261, 2005-Ohio-1508*,* 824 N.E.2d 990, ¶ 21, but instead documents the final administrative disposition of the case by the Cleveland Department of Law, Criminal Division.  Given the disposition decision, the document is plainly not work product specifically compiled in anticipation of trial, R.C. 149.43(A)(4).

{¶39} Finally, respondent makes numerous redactions of individuals' Social Security Numbers, which is appropriate under *State ex rel. Beacon Journal Publ'g Co. v. Akron*, 70 Ohio St.3d 605, 609-612, 640 N.E.2d 164 (1994).

### Records Regarding Detective Cottom

{¶40} OCVJC alleges that Cleveland PD has failed to produce certain records. "City [sic] has provided no records regarding Detective Cottom who unambiguously stated that she was the detective assigned to the case in an email on

October 26, 2016." (Response to memorandum, p. 5.) After noting that "some of the Davis records have a print date of October 27, 2016, suggesting she may have contacted the records department following this email," OCVJC concludes that the absence of Cottom's name on any of the released records "calls into question whether City has provided all of the Davis records." *Id.* In support of this assertion, OCVJC states without further explanation that "Hope Finney found out that Detective Cottom (Badge No. 239) was assigned to the case." (Complaint, p. 3.) Finney and Cottom subsequently exchanged email on October 26, 2017. *Id.* at 10-11. OCVJC redacted all information from both emails that would allow the court to identify any Cleveland PD investigation. What remains of Finney's message states, in part:

> According to Ms. ********, she has been denied copies of public records and information regarding ***********'s case. Ms. ******** didn't even know
>
> that a new detective was assigned to the case, if this is not true, could you please let me know what information she was given and forward to us any documentation that is allowed under the Public Records Acts.

Cottom responded, in pertinent part,

> But you would have to do a public records request to obtain any information on this case. This case has always been assigned to me. But her daughters previous allegations were investigated by our office and our detectives, but that is not the same case as the one I am investigating, similar but not the same.

Cleveland PD addresses the email exchange as follows:

> [The Finney] email is unclear which request it is referring to, as it is without identifying information and several words are missing from the right edge of the document, but appears to be allegedly pertaining to the Furner request as it references a "daughter." However, even if that email were pertaining to the Davis request, the email is simply a request for confirmation on whether another individual was denied records, followed by Detective Cottom's response that records have to be obtained through a public records request and that the case in question is not the case she is investigating.

(Answer, p. 4.) Although not specifically addressing the Cottom issue, Cleveland PD's public records administrator testifies comprehensively that "all records responsive to Public Records Requests pertaining to this case, 2016-00872-PQ, have been provided and fulfillment of the request is complete." (Answer, Roberson Aff.).

{¶41} Based on the evidence, I find it more likely that this email communication reflected conflation by Finney of separate investigations and investigators. The emails, standing alone, do not establish that Detective Cottom was assigned to the Davis investigations that are the remaining subject of this action. OCVJC neither identifies the Davis records with "a print date of October 27, 2016," nor shows how that datum establishes that Detective Cottom was assigned to a Davis case responsive to the request. Even a reasonable and good faith belief by a requester, without supporting evidence, does not constitute sufficient evidence to establish that a responsive document exists. *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 133 Ohio St.3d 139, 2012-Ohio-4246, 976 N.E.2d 877, ¶ 24-26; *State ex rel. Gooden v. Kagel*, 138 Ohio St.3d 343, 2014-Ohio-869, 6 N.E.3d 1170, ¶ 8. I conclude that OCVJC has not shown by clear and convincing evidence that Cleveland PD has omitted any responsive records regarding Detective Cottom from its responses to requester or to the court.

### Timeliness of Production of Records

{¶42} The requests in this case were made to Cleveland PD no later than April 27, 2016 for the Furner records (Complaint, p. 4.), and September 8, 2016 for the Davis records. (Memorandum, p. 1-2.) Cleveland PD did not begin providing records in response to either request until January 10, 2017, eight months after the Furner request, and four months after the Davis request. (*Id.*; Roberson Aff., ¶ 2.) For both requests, the completed production of records has taken substantially longer. I find that OCVJC has shown by clear and convincing evidence that Cleveland PD failed to

comply with its obligation under R.C. 149.43(B)(1) to provide copies of the requested records "within a reasonable period of time."

### Provision of Explanation Including Legal Authority

{¶43} When a public office denies a request in part or in whole, it must "provide the requester with an explanation, including legal authority, setting forth why the request was denied."  R.C. 149.43(B)(3).  Respondent violated its obligation to provide the full explanation and legal authority it relied on to withhold or redact the Davis records, and I recommend that the court issue an ORDER for respondent to do so forthwith.[7]

### Conclusion

{¶44} Upon consideration of the pleadings, attachments, and responsive records filed under seal, I find that Cleveland PD's motion to dismiss the claim in this action for records responsive to the Furman request should be GRANTED.  The motion should also be GRANTED with respect to those records and portions of records that have been provided without redaction to OCVJC in response to the Davis request.

{¶45} I recommend the court find that Cleveland PD has met its burden to show that records excepted under the constitutional right to privacy may be redacted. I recommend that the court find that Cleveland PD has not met its burden to show that portions of records it identifies as records of "joint investigation" are subject to exception under former R.C. 2151.421(H) or R.C. 5153.17.  I recommend that the court find that Cleveland PD may redact other items from its records only as expressly determined in the sections following "Other Exceptions" in this report.  The court will not undertake to perform the redactions ordered.  It is the responsibility of respondent to release any additional records, properly redacted, in conformity with the findings and order issued by

---

[7] The Rollins affidavit contains detailed explanations and legal authority which could be depersonalized, extracted and used, as modified by the court's order, to satisfy this obligation.

the court.  *See State, ex rel. Toledo Blade Co. v. Telb*, 50 Ohio Misc.2d 1, 11-12, 552 N.E.2d 243, 251 (C.P.1990).

{¶46} I recommend that the court issue an order GRANTING OCVJC's claim for relief for production of records as detailed above, and requiring Cleveland PD to provide OCVJC with an explanation, including legal authority, for the authorized withholding and redactions of the records thus produced.  I further recommend that the court order that OCVJC is entitled to recover from Cleveland PD the costs associated with this action, including the twenty-five dollar filing fee.  R.C. 2743.75(F)(3)(b).

{¶47} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation.  Any objection shall be specific and state with particularity all grounds for the objection.  A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto.  R.C. 2743.75(G)(1).*

_____
JEFFERY W. CLARK
Special Master

cc:

Christopher D. Woeste
P.O. Box 369
Powell, Ohio 43065

Stacey M. Pellom
City of Cleveland, Department of Law
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114

**Filed November 17, 2017**
**Sent to S.C. Reporter 12/11/17**